511 P.2d 580

Geil SALAZAR, Angelo Scarafiotti, Francisco Garcia, Gerardo Tovar, Plaintiffs-Appellees,

v.

KAISER STEEL CORPORATION, Employer, Self-Insured, Defendant-Appellant.

Nos. 1010–1013.

Court of Appeals of New Mexico.

April 27, 1973.

Certiorari Denied May 25, 1973.

Paul A. Kastler, John P. Davidson, Kastler & Erwin, Raton, Kenneth L. Harrigan, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for defendant-appellant.

Charles G. Berry, Marchiondo & Berry, P.A., John C. Maine, Jr., Martin & Maine, Albuquerque, for plaintiffs-appellees.

## OPINION

WOOD, Chief Judge.

The trial court awarded occupational disease disablement benefits in each of these cases. The appeal by Kaiser (Kaiser Steel Corporation) raises issues as to (1) physical incapacity; (2) notice; and (3) attorney fees.

*Physical incapacity.*

The right to compensation for occupational disease depends on disablement. Section 59–11–7, N.M.S.A.1953 (Repl.Vol. 9, pt. 1). Disablement is defined by § 59–11–4(a), N.M.S.A.1953 (Repl.Vol. 9, pt. 1) to mean:

    " * * * total physical incapacity by reason of an occupational disease as defined in this act to perform any work

for remuneration or profit in the pursuit in which he was engaged. * * * "

The four plaintiffs worked as underground coal miners. The occupational disease is coal worker's pneumoconiosis. Section 59–11–21(32), N.M.S.A.1953 (Repl. Vol. 9, pt. 1, Supp.1971). The trial court found each of the men to be disabled by reason of this occupational disease. Kaiser does not contend, in the appeal, that the men do not have the disease. Kaiser does not challenge the finding of disablement as to Scarafiotti. Kaiser asserts the evidence is insufficient to support a finding of disablement as to Garcia, Salazar and Tovar.

■ In answering Kaiser's contention we consider only the evidence and inferences therefrom which support the findings of the trial court. Ojinaga v. Dressman, 83 N.M. 508, 494 P.2d 170 (Ct.App.1972). Our review does not consider much of the evidence discussed by Kaiser because that evidence is to the effect that Garcia, Salazar and Tovar did have some physical capacity to perform work for remuneration as underground coal miners on the dates the trial court found them to be disabled. Thus, we do not consider medical testimony favorable to Kaiser, the evidence of Kaiser employees that the men performed their work satisfactorily, the evidence that the union to which the men belonged assisted them in preparing their occupational disease claims or the evidence that two of the men had made plans for retirement prior to the dates they were found to be disabled.

■ We note, however, that receipt of retirement benefits would not prevent a workman from receiving occupational disease benefits if disablement has been established. See Beth-Elkhorn Corporation v. Hillman, 465 S.W.2d 281 (Ky.App.1971); Lumsden v. Despatch Shops, 5 A.D.2d 242, 171 N.Y.S.2d 189 (1958).

Kaiser claims the evidence of disablement is insufficient because the evidence is insufficient to show that Garcia, Salazar and Tovar were totally physically incapacitated to work for pay as underground coal miners. In advancing this contention, Kaiser asserts the phrase "total physical incapacity" means a "total physical inability." There is evidence that Salazar worked for more than a week after the date he was found to be disabled; Garcia worked about three and one-half months and Tovar worked approximately six months.

Kaiser states: "If a person is physically capable of performing work for remuneration as an underground coal miner, and in fact performs work for remuneration as an underground coal miner, he cannot be totally physically incapacitated from performing any work for remuneration in that pursuit. * * * " Support for this view, with which we disagree, appears in La-Coste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (1967) and Muniak v. ACF Industries, Inc., 7 A.D.2d 258, 182 N.Y.S.2d 539 (1959).

"Total physical incapacity" may or may not have the meaning which Kaiser would give to that phrase. The words are not defined in the statute. However, they are "* * * presumed to be used in their ordinary and usual sense. * * * " Bettini v. City of Las Cruces, 82 N.M. 633, 485 P. 2d 967 (1971). We look to the dictionary for this ordinary and usual meaning. Webster's Third New International Dictionary (1966) defines "incapacity" in terms of "incapable." In turn, "incapable" is defined as "not able or fit for the doing or performance." Thus, "disablement" under § 59–11–4(a), supra, giving an ordinary meaning to "incapacity," may mean total physical unfitness, by reason of occupational disease, to perform any work for remuneration in the pursuit in which the workman was engaged. Under such a meaning, the evidence of Dr. Phelps clearly supports the trial court's findings of disablement.

Alternatively, applying another ordinary meaning to "incapacity," disablement may have the meaning asserted by Kaiser; that of total physical inability, by reason of occupational disease, to perform work for remuneration in the pursuit in which the workman was engaged. In this appeal, we

assume that disablement requires a total physical inability to perform work.

Even with this assumption, it does not necessarily follow that the performance of work for pay prevents a finding of total physical inability to work. In a workmen's compensation case, the New Mexico Supreme Court stated that " * * * to suffer an entire loss of wage earning ability does not mean that a workman must be in a state of absolute helplessness, or unable to do work of any kind. * * * " Lozano v. Archer, 71 N.M. 175, 376 P.2d 963 (1962). We recognize that the requirements of § 59–11–4(a), supra, are more definite and specific than the requirements for total disability under our workmen's compensation law. Holman v. Oriental Refinery, 75 N.M. 52, 400 P.2d 471 (1965). Nevertheless, the concept of absolute helplessness, or inability to do work of any kind, has been rejected in cases dealing with occupational disease. The workman " * * * may, from a clinical standpoint, be totally and permanently disabled but through sheer drive of will power and habit continue for some time at ·his job. * * * " Babcock & Wilcox, Inc. v. Steiner, 258 Md. 468, 265 A.2d 871 (1970).

In Alexander v. Ford Motor Co., 329 Mich. 535, 46 N.W.2d 369 (1951) the statute involved defined "disability" as ". . . 'the state of being disabled from earning full wages at the work in which the employe was last subjected to the conditions resulting in disability'. * * * " An award to Alexander on the basis of an occupational disease was sustained although he had subsequently worked for another company for a short time. Disability was upheld on medical evidence that his occupational disease " '. . . reduce[s] his vital capacity to the point that he cannot carry on heavy physical work. It would be dangerous for him to work with silica dust again. * * * ' "

█ The fact that Garcia, Salazar and Tovar worked for varying periods of time after the date the trial court found them to be disabled does not require a ruling that the men were not disabled as a matter of law. We now consider whether there was evidence to support the factual determination that the three men were disabled.

In asserting the evidence is insufficient to support a finding of disablement, Kaiser relies on the testimony of Dr. Phelps, the principal medical witness for the plaintiffs. Kaiser asserts Dr. Phelps testified the three men should not, from a medical viewpoint, continue to work as underground coal miners. Kaiser claims evidence that it is medically inadvisable to work is not evidence of total physical inability to work. Support for this view appears in Ferguson & Lange Foundries, Inc. v. Industrial Com., 380 Ill. 185, 43 N.E.2d 684 (1942); LaCoste v. J. Ray McDermott & Co., supra; Muniak v. ACF Industries, Inc., supra.

█ Kaiser's characterization of Dr. Phelps' testimony is too limited. Dr. Phelps testified the men were permanently and totally disabled. His testimony makes it clear that he used "disability" and "physical incapacity" as identical terms. He testified the men could not physically do the work, were physically incapable of exertion, and they "should not work, period." When reminded that Salazar had in fact worked subsequent to his alleged date of disablement, he stated: " * * * he's doing it at the ex pense [sic] of something else in his body * * * probably his heart. He can come to work, but he's going to be paying a price for it." Similar testimony applies to Garcia and Tovar. Dr. Phelps explained that work could be performed by a person incapacitated from a medical viewpoint; that such work depended on motivation.

Garcia testified that he had some of the lightest work in the mine and was "forcing myself to do it 'til I can get by." Salazar testified to his "inside pains" and "short breathings;" that he was sick "but I tried my best to keep up all day through the shift." Tovar testified to "weak" breathing conditions, tiring easily and forcing himself to work because he needed money.

The company medical director testified it would be unlikely that he would recom-

mend employment of any of the three men as "new hires."

The evidence of the three men that they forced themselves to work, and the evidence of Dr. Phelps that the men physically could not do the work, is substantial evidence of total physical inability. The findings of disablement are affirmed. Babcock & Wilcox, Inc. v. Steiner, supra; Alexander v. Ford Motor Co., supra.

### Notice.

■ The notice provision applicable in each of the four cases provides that a claimant " * * * shall give notice in writing to his employer of the occupational disease within thirty (30) days after the beginning of such disablement. * * *" Section 59–11–16.1, N.M.S.A.1953 (Repl. Vol. 9, pt. 1, Supp.1971). Written notice was given in each case. The issue is whether that notice was given within thirty days after the beginning of disablement.

In each case the trial court found the date of disablement. It also found that written notice was given on the same date. Thus, notice was timely if the trial court's findings as to the dates of disablement were proper.

Substantial evidence supports the trial court's findings. This evidence is the testimony of each of the men that they had no knowledge of their disablement until contacted by a representative of their union. This contact date was the disablement date found by the trial court.

Kaiser would place the beginning of each man's disablement at an earlier date. Specifically, Kaiser would have us hold, as a matter of law, that the date of disablement is the date of the medical examination of Dr. Phelps. At the conclusion of the examination, Dr. Phelps told each of the men they should get out of the mine. Dr. Phelps did testify the men were disabled on that date.

Kaiser states: ". . . the period of limitation for giving notice to the employer begins when the employee is given some indication by a doctor sufficient to appraise him of the nature of his disease and that the resultant (if any) disability is employment-related." Thus, Kaiser argues that each of the men knew or should have known of their disablement at the conclusion of their respective examinations by Dr. Phelps. The consequence, if this contention is correct, is that notice would not have been given in any of the cases within thirty days of the disablement.

Kaiser's contentions cannot be upheld as a matter of law because of the evidence. Dr. Phelps told the men to get out of the mine but he did not tell the men they were disabled. He did not tell the men they were disabled because he felt this was confidential information which should go to the union which requested the men be evaluated. In his report to Dr. Dorsey, for the union, he did mention the disability. Each of the men has a limited formal education. The foregoing evidence, together with evidence of the men's reliance on the union for assistance in matters of this kind, supports the findings of the trial court. The trial court found that the men were neither aware of the nature of their disease, nor of their disablement, until the date the trial court found their disablement occurred.

Since substantial evidence supports the findings of the trial court, and since the question of notice could not be determined as a matter of law, there is no merit to Kaiser's notice contentions. See Butler v. United States Steel Corporation, 205 Pa. Super. 508, 211 A.2d 35 (1965).

### Attorney fees.

The trial court awarded an attorney fee of $3,750.00 in each case, for a total of $15,000.00. Kaiser asserts the trial court abused its discretion in making these awards.

Kaiser's contention has two aspects—union involvement and the similarity of the lawsuits. The union arranged for a medical examination, handled the notice requirements and, according to Kaiser, saw to it the men obtained an attorney. Thus, Kaiser asserts the preparatory work was

largely done by the union. Although four lawsuits were filed, the suits are related, have identical legal issues and substantially similar factual issues. The four cases were tried at the same time. The trial took two days.

Kaiser does not claim the four cases should be treated as a single case in the matter of attorney fees. It does claim " * * * they cannot, in all fairness, be treated as four separate cases." Kaiser suggests the total of the attorney fees be reduced to no more than $4,000.00.

■ Section 59–11–35(D), N.M.S.A. 1953 (Repl.Vol. 9, pt. 1, Supp.1971) provides for attorney fees in occupational disease cases. The provisions of § 59–11–35(D), supra, are similar to the provisions for attorney fees in workmen's compensation cases. See § 59–10–23(D), N.M.S.A. 1953 (Repl.Vol. 9, pt. 1). An award of an attorney fee is authorized in each of the cases. The award is for an amount the trial court deems "reasonable and proper." The amount awarded will not be disturbed except for an abuse of discretion. Adams v. Loffland Brothers Drilling Company, 82 N.M. 72, 475 P.2d 466 (Ct.App.1970).

■ The fact that the union aided the plaintiffs in matters preliminary to suit does not show, as a matter of law, that the trial court abused its discretion. The fact of similar pleadings and issues, depositions applicable to all four cases, combined hearings on motions, pre-trial and trial, does not show, as a matter of law, that the trial court abused its discretion.

■ Section 59–11–35(D), supra, requires the trial court, in setting the amount of attorney fees, to consider sums offered by the employer and the present value of the award in the workman's favor. See Keyser v. Research Cottrell Company, 84 N.M. 173, 500 P.2d 997 (Ct.App.1972). The showing in this record is that no sum was offered by Kaiser at any stage of the proceedings. The judgment for each plaintiff awards $48.00 per week for 500 weeks, a total of $24,000.00. The only showing in this record, based on the date disability began and the date of judgment, is of a present cash value at time of judgment of approximately $21,000.00. The attorney fee award is approximately 18% of the only showing as to the present value of the judgment and less than 16% of the total amount of the judgment. On the basis of the mandatory factors of § 59–11–35(D), supra, we cannot say the trial court abused its discretion.

■ The issues in each case were the nature of the disease, whether that disease resulted in a job related disablement, when any disability began and notice. In Scarafiotti's case, Kaiser stipulated to a permanent disability but it did not admit the nature of the disease causing the disability. Kaiser's concession came only after the case was called for trial. Kaiser's stipulation does not require, as a matter of law, that the attorney fees in Scarafiotti's case be an amount different from the fees in the other cases.

The issues were hard fought and well tried. Kaiser seriously asserted and presented evidence that the disease was silicosis and not pneumoconiosis. The medical testimony is extensive. Not only was the diagnosis of pneumoconiosis disputed, the tests used in reaching that diagnosis were challenged, as well as the method used in conducting the tests. The trial court's remarks indicate the court found difficult legal considerations applying to each of the issues, was aware "there's been a lot going on" and that the cases were unusual.

The considerations in the two preceding paragraphs affirmatively indicate an absence of an abuse of discretion.

■ The judgment of the trial court in each case is affirmed. Plaintiffs ask for an award of $1,000.00 for their attorneys' services in each case on appeal. The four cases were consolidated for the appeal; we deal only with one case. Plaintiffs are awarded a total of $2,000.00 for the services of their attorneys in the consolidated appeals.

It is so ordered.

HENDLEY and LOPEZ, JJ., concur.