545 P.2d 88

**Nathan W. WINDER, Plaintiff-Appellant,**

**v.**

**Patricia Medina MARTINEZ and Epiminio Medina, Defendants-Appellees.**

**No. 2002.**

Court of Appeals of New Mexico.

Dec. 16, 1975.

Certiorari Denied Jan. 15, 1976.

Tandy L. Hunt, Turpen, Hunt & Booth, Albuquerque, for plaintiff-appellant.

Charles A. Pharris, Keleher & McLeod, Albuquerque, for defendants-appellees.

## OPINION

WOOD, Chief Judge.

This lawsuit arose out of a motor vehicle collision. There is no issue concerning defendants' liability. The jury returned a verdict for plaintiff, who appeals. Plaintiff tendered testimony from a psychologist on the issue of damages. The dispositive issue is whether the trial court erred in excluding this testimony. This issue involves consideration of (1) evidence of brain damage; (2) hypothetical questions; (3) irrelevant and immaterial evidence; and (4) qualifications of a psychologist to testify.

In the presence of the jury the psychologist testified as to his training and experience. In addition, he testified that he was "certified" to practice psychology in New Mexico. See §§ 67–30–5(B)(4) and 67–30–11, N.M.S.A.1953 (2d Repl.Vol. 10, pt. 1). He testified that he had evaluated the plaintiff and identified the factors involved in arriving at an evaluation.

These factors included: (a) an intensive interview, (b) various tests which were identified and explained, (c) plaintiff's age, education and work experience, (d) plaintiff's social and economic situation, and (e) the job market. There is no dispute about these factors.

Another factor considered was evaluations of plaintiff by others. The result of tests administered by the psychologist and the result of psychological tests administered by others were essentially the same.

In explaining the result of one of the tests, the psychologist referred to the "defective range of intellectual function." Defendants' objection was sustained; the trial court informed the jury: "There is no connection whatsoever between this man's intelligence and this automobile accident which we are concerned about here."

Plaintiff made a tender of proof outside the presence of the jury. Defendants made a series of objections to the tendered testimony. The trial court ruled: "The objection will be sustained, and for the further reason that this witness is not qualified to testify concerning brain damage, nor can such an evaluation or conclusion be made from psychological tests."

### Brain Damage

The only reference to brain damage was two questions. The first question asked was whether the tests were capable of revealing brain damage. The psychologist answered: " . . . there are indicators on these instruments which would point to brain damage possibility." The second question, answered in the affirmative, was whether it was commonly accepted in the psychologist's profession that the tests "can indicate brain damage". Damages based on surmise, conjecture or speculation cannot be sustained. Damages

must be proved with reasonable certainty. *Hebenstreit v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 N.M. 301, 336 P.2d 1057 (1959). The two questions and answers concerning brain damage raised no issue concerning brain damage for two reasons: (1) the answers showed there was no more than a possibility that the tests could show brain damage, and (2) there was no attempt to show that the plaintiff had suffered brain damage.

Neither counsel contended that the tendered testimony went to brain damage. Concern with whether the tendered testimony of the psychologist raised an issue as to brain damage was interjected by the trial court. Since the tendered testimony did not raise an issue as to brain damage, we are not concerned with whether the psychologist was qualified to testify on the subject. See *Woods v. Brumlop*, 71 N.M. 221, 377 P.2d 520 (1962).

*Hypothetical Questions*

The tendered testimony went to plaintiff's mental ability and his employment prospects. Plaintiff obtained the psychologist's opinion on these subjects by asking hypothetical questions. Defendants objected that the hypotheticals were not proper hypotheticals on three grounds. Since the trial court sustained the defense objections with a general ruling, we consider each of the grounds stated by defendants.

The first objection was that there were items included in the hypotheticals for which there had been no proof and for which there will be no proof. The second objection was there were statements in the hypotheticals which were factually incorrect. The third objection was that items were omitted from the hypotheticals which would have to be taken into consideration "for an intelligent or reasonable answer to be given."

■ What item had been included for which there was no proof? What was included that was factually inaccurate? What necessary item had been omitted? An objection which does not specify the particular ground on which the evidence is objectionable does not call the trial court's attention to the matter to be decided. *Williams v. Vandenhoven*, 82 N.M. 352, 482 P.2d 55 (1971). We doubt that the objections were sufficiently specific to be treated as objections; however, we do not decide the objections on that ground.

■ Our answer to the first two objections is factual. There was proof as to the items included in the hypotheticals; the items were not factually incorrect. All the items included in the hypotheticals can be found in evidence introduced prior to the tender.

The third objection went to items omitted from the hypothetical questions. II Wigmore on Evidence, 3d Ed., § 682(b) states:

"The question, on principle, *need not include* any particular number of facts; *i. e.* it may assume any one or more facts whatever, and *need not cover all the facts which the questioner alleges* in his case. The questioner is entitled to the witness' opinion on any combination of facts that he may choose. . . . [T]he questioner need not cover in his hypothesis the entire body of testimony put forward on that point by him or by the opponent, but may take as limited a selection as he pleases and obtain an opinion on that basis. Such is the orthodox doctrine as applied by most Courts." (Emphasis in Original.)

■ Wigmore, supra, states that the court may interfere to prevent questions which are valueless or are fairly likely to mislead the jury. Such is not the situation in this case. On the basis of plaintiff's work history, the psychologist's tests, and tests of others available to the psychologist, the psychologist was asked: " . . . would you have an opinion as to whether Mr. Winder's mental abilities were changed as a result of this collision?" After answering that he had an opinion, the psychologist was asked to state it. The opinion was: " . . . that his mental abilities

were changed . . . we have to deal with the whole person concept and the functions that you indicate in the question are such that he was utilizing certain abilities, which according to the test results that I have, he no longer would be able to perform those functions." Subsequently the psychologist was asked to assume that an orthopedic surgeon had testified concerning plaintiff's ability to return to work upon restoration of muscle tone and conditioning. With this additional factor, the psychologist's opinion was that plaintiff's employment prospects were "relatively nil." The psychologist also testified that "there is no demonstrable residual functional capacity for employability." These questions and answers were not valueless and, in the context in which the questions were asked, would not have misled the jury.

*State v. La Boon,* 67 N.M. 466, 357 P.2d 54 (1960) states that counsel "may propound a hypothetical question based upon his theory provided it is based upon evidence which the jury could reasonably believe to be true . . . ." The jury could reasonably have believed the psychologist's testimony to be true.

The third objection to the hypothetical question was without merit. The trial court erred in sustaining the objections to the hypothetical questions. In so ruling, we have not considered Rule of Evidence 705 because neither side argues that rule.

*Irrelevant and Immaterial*

■ Defendants twice claimed that the psychologist's testimony was irrelevant and immaterial. Defendants never went beyond this general objection. This general objection was insufficient. *Tobeck v. United Nuclear-Homestake Partners,* 85 N.M. 431, 512 P.2d 1267 (Ct.App.1973).

*Qualification of the Psychologist to Testify*

Defendants objected to the tendered testimony: " . . . on the grounds there's no proper foundation laid for the testimony of the witness as to the opinions given, either as to the existence of any psycholog-

ical disability or in terms of the causation of that disability."

From the record before us we do not know when this lawsuit was filed and, therefore, do not know whether the Rules of Evidence are applicable to this case. See Supreme Court order as to effective date of the Rules of Evidence appearing in the annotation to § 20–4–101, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973). Accordingly, in discussing the objection concerning the qualifications of the psychologist to testify, we do not consider Rules of Evidence 702, 703 and 704.

*State v. Padilla,* 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908 (1959) states:

"We adopt the modern trend of authority in allowing a properly qualified psychologist to give his opinion as an expert as to the result of tests made by him, but that such testimony should be limited to that which the witness is qualified to offer on the basis of his professional training and experience and which he can substantiate by evidence that would be acceptable to recognized specialists in the same field."

*State v. Padilla,* supra, held the admission of the psychologist's testimony in that case was error because the evidence was insufficient as to the witness's training and experience. That is not the situation in this case. Apart from the testimony concerning the psychologist's training and experience, it is undisputed that the psychologist has been certified by the State of New Mexico to practice psychology. Section 67–30–3(D), N.M.S.A.1953 (2d Repl.Vol. 10, pt. 1) defines the practice of psychology to mean:

" . . . the application of established methods or procedures of understanding, predicting or modifying behavior. The application of said principles includes counseling, guidance, and behavior modification with individuals or groups with problems in the areas of work, family, school, and personal relationships; measuring and testing of personality, intelli-

gence, aptitudes, emotions, public opinion, attitudes, skills; teaching or lecturing in psychology; and doing research on problems relating to human behavior; . . ."

Since the psychologist's practice is defined to include the testing of intelligence, aptitudes and skills, and since the witness in this case was certified by the State to practice psychology, the *Padilla* requirement of training and experience was met.

The psychologist testified that his test results were essentially the same as tests conducted by others. He testified that two of the tests were "reliable instruments . . . for the kinds of data that I obtained. Both of these are recognized by professional psychologists as being standard instruments that are traditionally used." There was nothing to the contrary. The *Padilla* requirement of acceptability by recognized specialists in the same field was met. We add that defendants' own evidence also shows the acceptability requirement was met. Included within various medical records introduced by defendant were the reports of Dr. Leiding, a clinical psychologist, and Dr. Maier who conducted a neurological examination. Dr. Leiding's report refers to a "low level of intellectual functioning". Dr. Maier's report refers to "apparent mental subnormality".

■ The psychologist was qualified to give his opinion as to the results of his tests. *State v. Padilla,* supra. Defendants assert, however, that he was not qualified to express an opinion that change in mental abilities was caused by the accident or that plaintiff was unemployable as a result of the accident. *Beal v. Southern Union Gas Co.,* 66 N.M. 424, 349 P.2d 337, 84 A. L.R.2d 1269 (1960) states: "From a number of given facts an expert witness may give his opinion as to what may or could have caused a certain result." Qualified as an expert in a speciality which includes the testing of intelligence, aptitudes and skills, the psychologist was qualified to express his opinion as to the cause of any change

in plaintiff's mental ability and employment prospects.

■ We recognize that the trial court determines whether an expert has the necessary qualifications to testify, and that the trial court's determination will not be overturned unless an abuse of discretion is shown. *State ex rel. State Hwy. Dept. v. Fox Trailer Court,* 83 N.M. 178, 489 P.2d 1176 (1971). In this case there is nothing indicating the psychologist was not qualified to testify; there was an affirmative showing that he was qualified, and the trial court had admitted reports of other doctors going to the same propositions for which the psychologist's testimony was tendered.

■ At oral argument, defendants argued that the psychologist's testimony was properly excluded because his opinion was expressed in terms of "possibility" rather than "probability". No such contention was raised in the trial court. It will not be considered. Rule 11 of the Rules Governing Appeals.

■ The trial court abused its discretion in sustaining defendants' objections to the tendered testimony with this exception —exclusion of the testimony concerning the possibility of brain damage was not error.

The judgment is reversed because of the wrongful exclusion of evidence pertaining to plaintiff's damages. The cause is remanded with instructions to grant plaintiff a new trial limited to the question of damages. *Martin v. Darwin,* 77 N.M. 200, 420 P.2d 782 (1966).

It is so ordered.

LOPEZ, J., concurs.

HERNANDEZ, J., dissenting.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

There is one factual matter not mentioned in the opinion which is necessary to an understanding of my disagreement with

the majority. The plaintiff was examined twice by a neurologist. The report of the first examination is dated June 18, 1971, and concludes in part: "The neurological examination is totally normal. . . . I think that some of his complaints, other than the headache and neck pain, are unrelated to any fixed, demonstrable neurological lesion." The second report dated March 28, 1972, concluded in part: "The neurological examination is again totally normal, this includes gait and station, fields of vision and fundi. . . . I think it is likely that Mr. Winder simply fits into the lower part of the 'bell-shaped curve' regarding mental function. I feel that his apparent mental subnormality is a combination of heredity and possible cultural depravation."

In my opinion, the trial court was correct in ruling that Dr. Fishburn, the psychologist, was not qualified to answer the following question: "Further assume that during the collision that his head struck the interior of the vehicle he was in. Assuming all of these different facts and things that were done prior to the collision, and taking into consideration your experience in vocational rehabilitation and your education, and all of the other information you have available on Mr. Winder, do you have an opinion as to whether Mr. Winder's mental abilities were changed as a result of this collision." Considering that no causal connection between the accident and the plaintiff's mental condition after the accident had been established, asking Dr. Fishburn this question was, in effect, asking him to establish that connection. I believe that the trial court was correct when it ruled that he was not qualified to give such an opinion. Granted, Dr. Fishburn was eminently qualified to testify as to the plaintiff's mental ability, that is, whether he was sub-normal or abnormal. He was also qualified to give an opinion as to the mental and emotional ability to perform a given kind of work. However, to have allowed him to answer such a question was to allow him to speculate as to a connection. Just how speculative his answer would have been is pointed out by the reports of the neurologist, which were subsequently introduced into evidence.

I also disagree with the conclusion that only general objections were made by the defendant: to my mind, the following objections were sufficiently specific to be sustained:

"I object on the grounds that the testimony of this witness is irrelevent and immaterial, to this case. This case involves a claim for personal injuries, and this is not within the issues of the lawsuit. I further object on the grounds there's no proper foundation laid for the testimony of the witness as to the opinions given, either as to existence of any psychological disability or in terms of the causation of that disability."