550 P.2d 144

**Nick HERRERA, Plaintiff-Appellee,**

v.

**FLUOR UTAH, INC., Employer, and the Hartford Insurance Company, Insurer, Defendants-Appellants.**

**No. 2221.**

Court of Appeals of New Mexico.

April 27, 1976.

Certiorari Denied May 20, 1976.

**246**

William P. Gralow, Civerolo, Hansen & Wolf, Albuquerque, for appellants.

James E. Thomson, Zinn & Donnell, Santa Fe, for appellee.

OPINION

LOPEZ, Judge.

The plaintiff brought suit in the district court for compensation for an occupational disease incurred while working for Fluor Utah, Inc. The suit was brought pursuant to the New Mexico Occupational Disease Disablement Law § 59–11–1 through § 59–11–43, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1). Judgment was entered by the trial court in favor of the plaintiff and the defendants appeal. We affirm.

The defendants present three points for reversal: (1) that plaintiff does not suffer from a compensable disease; (2) that the plaintiff is not totally disabled; (3) that the court erred in allowing one of the plaintiff's doctors to respond to plaintiff's counsel's questions on the law.

The plaintiff is 30 years old with a 10th grade education. His usual employment is as a painter. The plaintiff was working for the defendant as a painter when he inhaled fumes from paint that he was applying. The trial judge found that this exposure to paint caused him to develop a permanent allergic disorder to paint and other substances resulting in severe and chronic bronchitis, kidney disorders and chronic asthma.

The defendants' first point is that the plaintiff's disease is not compensable under the New Mexico Occupational Disease Disablement Law. The reasons advanced are two-fold: (1) that the disease suffered by the plaintiff does not fit the statutory definition of occupational disease, and (2) that allergies are not occupational diseases acquired in the course of employment.

The first argument requires an examination of the statute. The definition of occupational disease found there is ". . . 'occupational disease' includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such . . . ." Section 59–11–21, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1).

The defendants argue that the plaintiff's allergy is not peculiar to the occupation of painting since the plaintiff is apparently allergic to other substances which can be found in other work environments besides painting jobs. They also argue that the

phrase "due to causes in excess of the ordinary hazards of employment" means there must be an unusual exposure to the paint, a danger greater than the usual danger from paint. An early case from the Supreme Court of Connecticut defined the meaning of these terms:

> "This definition does not require that a disease, to be within the definition, should be one which arises solely out of the particular kind of employment in which the employee is engaged, nor that it should be due to causes in excess of the ordinary hazards of that particular kind of employment. . . . The phrase, 'peculiar to the occupation,' is not here used in the sense that the disease must be one which originates exclusively from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations . . . and the phrase 'employment as such' means employment in general. To come within the definition, an occupational disease must be a disease which is a natural incident of a particular occupation, and must attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of that attending employment in general."

*Glodenis v. American Brass Co.,* 118 Conn. 29, 40, 170 A. 146, 150 (1934); quoted in *LeLenko v. Wilson H. Lee Co.,* 128 Conn. 499, 24 A.2d 253 (1942). See, e. g., *Ritter v. Hawkeye Security Insurance Co.,* 178 Neb. 792, 135 N.W.2d 470 (1965). Larson states the test to be: "(1) whether the employment conditions actually caused the disability, and (2) whether these conditions were peculiar to the employment in the sense that they were encountered there in a degree beyond that prevailing in employment generally." 1A Larson's Workmen's Compensation Law, § 41.62 at 7–298 to 7–299; *Aleutian Homes v. Fischer,* 418 P.2d 769 (Alaska 1966).

Applying this definition to the defendants' contention it is apparent that the fact that the plaintiff is now allergic to substances found in many other environments does not demonstrate that his disease, the allergy itself, was not acquired from his experience at the defendant's place of employment. The defendants' argument that others were exposed to the paint and did not get ill is a misinterpretation of the statute as shown from the quotation in *Glodenis,* supra. The statute speaks of the ordinary hazards of employment *"as such"*; not the ordinary hazards of a particular job.

The defendants' other argument is that allergies cannot be compensable diseases because they are not acquired in the course of employment, but are rather brought to the employment. This argument rests on a premise contrary to the trial court's findings. The trial judge found that the plaintiff *developed* an allergy as a result of the job; that is, that the allergy itself was an occupational disease.

The defendants' argument is also based on the supposition that the plaintiff's reaction to the paint fumes was the result of his own undue susceptibility, and therefore non-compensable. This issue was addressed by Judge Learned Hand in *Grain Handling Co. v. Sweeny,* 102 F.2d 464 (2d Cir. 1939): "In order to recover a workman must be exposed to hazards greater than those involved in ordinary living, and the disease must arise from one of these. (Citations omitted). But although we must find special dangers in the employment and that the disease arises from them, I can see no reason for limiting the protected class to those who have a normal resistance to such diseases, or for excluding those who are abnormally vulnerable." This position has been adopted by a majority of states. 1A Larson's Workmen's Compensation Law, § 41.62 (1973). See, e. g. *Aleutian Homes v. Fischer,* supra; *Bober v. Independent Plating Corporation,* 28 N.J. 160, 145 A.2d 463 (1958). Our statute by its terms does not exclude any class of work-

men once its other requirements have been met and we see no reason to impart this additional restriction to it.

Our disagreement with the dissent is two-fold. The first point is that the substantiality of the evidence to support the trial court's findings (Trial Court's Findings of Fact 4 and 5) that paint fumes caused the allergy is not the appellant's basis for appeal and the court would exceed its appellate function in addressing this issue.

Our other point of disagreement with the dissent is over the evidence available in the record to support the trial court's findings with regard to causation. Doctor Novosad's testimony was that the plaintiff was allergic to paint. The doctor saw the plaintiff three days after the exposure to the paint. The doctor hospitalized him, and said that "[h]e had extensive studies during this time . . . he was studied and treated extensively over the next several months for this." The tests done to determine the nature of the plaintiff's allergy were described at great length. The doctor summarized his reasons for believing that the plaintiff's allergy was to paint as based upon "one, his history, two, the clinical course, with various things that have happened to him, three, the elimination of other possibilities or rather other probabilities and, four, taking into consideration the detailed allergist's report. . . ." In conclusion, the doctor's testimony was that there was no doubt, in all medical probability, that there was an association between the plaintiff's reaction and his exposure at the defendant's place of employment to the paint. The trial court did not think that the doctor was "guessing" and there was substantial evidence to support the trial court's findings.

There was, of course, one way to conclusively determine the cause of the plaintiff's allergy—to expose him to more of the same paint. Doctors Smith and Novosad agreed that the serious dangers to the plaintiff which could result from such a test were not justified by the benefits of knowing with absolute certainty the cause of the plaintiff's reactions. The law should not require measures which the medical experts decline to take for fear of endangering an individual's health.

In their second point the defendants take issue with the trial court's finding that the plaintiff is totally and permanently disabled. "Disablement" is defined in the statute as ". . . total physical incapacity by reason of an occupational disease as defined in this act to perform any work for remuneration or profit in the pursuit in which he was engaged. . . ." Section 59–11–4(a), N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1). There was substantial evidence to support the trial judge's finding that the plaintiff is unable to return to work as a painter. The contention that "pursuit" should be given a broad interpretation, so that the plaintiff's possibility of obtaining employment in other fields must be considered, has been foreclosed by our Supreme Court's decision in *Holman v. Oriental Refinery*, 75 N.M. 52, 400 P.2d 471 (1965). In that case the Court held that "pursuit" meant "occupation" or "vocation". The result was that the court granted plaintiff compensation even though he was employed as a car inspector since he could no longer work at his previous occupation as a gasoline filling station attendant.

The defendants' third point is that the trial court erred in permitting testimony by an expert witness about a legal conclusion. There were three different questions to which objection was made and they must be treated separately.

The plaintiff's counsel asked his expert medical witness, Dr. Novosad, whether the plaintiff's disease was an occupational disease within the meaning of § 59–11–21, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1) and read the statute to him. The doctor's response was that he could not separate the types of paint to which the plaintiff was allergic and the types which would not cause a reaction. He conclud-

ed that the plaintiff did have an occupational disease. Another question to which objection was made was what the proximate cause of the plaintiff's disease was, within the meaning of § 59–11–20, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1). The doctor responded that the plaintiff's disease was caused by a reaction to the paint, to a reasonable medical probability.

Both of these questions concerned causation, which was within the expertise of this witness. His testimony was not inadmissible because it also concerned a legal conclusion. Rule 704, N.M. Rules of Evidence, § 20–4–704, N.M.S.A.1953 (Repl. Vol. 4, Supp.1975). *Winder v. Martinez,* 88 N.M. 622, 545 P.2d 88 (Ct.App.1975).

The third question to which objection was made was whether the plaintiff had a disablement within the meaning of § 59–11–4, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1). In response to this question the doctor testified at some length about the necessity for the plaintiff to avoid paint and additional reactions which could develop. Numerous cases in the workmen's compensation area have allowed testimony as to the workmen's percentage of disability. Testimony about disablement calls for a similar conclusion on the doctor's part. *Hales v. Van Cleave,* 78 N.M. 181, 429 P.2d 379 (Ct.App.1967); *Seal v. Blackburn Tank Truck Service,* 64 N.M. 282, 327 P.2d 797 (1958); Rule 704, supra.

Judgment of the trial court is affirmed. The plaintiff is awarded $1,700.00 for attorney's fees in connection with this appeal. Section 59–10–23, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1).

IT IS SO ORDERED.

SUTIN, J., specially concurring.

HERNANDEZ, J., dissenting.

SUTIN, Judge (specially concurring).

A. *Disablement is primary factor.*

The trial court found that plaintiff incurred an occupational disease when, while working as a painter, "he inhaled fumes from paint he was applying pursuant to employer's instructions, causing him to develop a permanent allergic disorder to paint, severe and chronic bronchitis, kidney disorders, and chronic asthma."

Plaintiff's doctor, originally the doctor of the defendants, testified that "It's not an allergy, it's a paint reaction." Plaintiff developed a reaction to paint from inhaling fumes from the paint used during the course of his employment. As a result of this "paint reaction", plaintiff was disabled due to bronchitis, kidney disorders, and chronic asthma.

The words "allergy" and "disease" are not defined by statute. Neither were these words defined by the medical witnesses. The testimony on the meaning of "allergy" was a play on words. I don't know whether a "paint reaction" is an allergy or a disease. I don't know whether an allergy is a disease. I don't know whether the trial court meant that the development of an allergic disorder to paint was an occupational disease. I don't know whether plaintiff became disabled due to the "paint reaction". But I do know that an occupational disease occurred when plaintiff became disabled by reason of bronchitis, kidney disorders and chronic asthma growing out of the "paint reaction". What medical term envelopes the words "paint reaction" is immaterial.

Section 59–11–4(a), N.M.S.A.1953 (2d Repl.Vol. 9, pt. 1) does define "disablement".

(a) "Disablement" means total physical incapacity by reason of an occupational disease as defined in this act to perform any work for remuneration or profit in the pursuit in which he was engaged. . . .

Plaintiff had the right to compensation where the disablement was proximately caused by an occupational disease arising out of and in the course of his employment. Section 59–11–7, supra. Whether plaintiff had an "allergy" is immaterial, "if the particular conditions of employment in fact

caused the disability." 1A Larson's Workmen's Compensation Law, § 41.62 (1976).

The trial court found that plaintiff became disabled on September 14, 1973. Defendants do not challenge disability. Plaintiff is, therefore, entitled to compensation. *Salazar v. Kaiser Steel Corporation,* 85 N.M. 254, 511 P.2d 580 (Ct.App.1973).

B. *Payment of claims may constitute an admission against interest.*

On September 18, 1973, the employer notified Hartford that plaintiff was painting above a converter building and inhaled escaping gases and suffered dizziness from inhaling gases. Hartford's doctor, who testified for plaintiff, also notified Hartford that plaintiff's injury arose from breathing fumes from red plastic paint. Thereafter, Hartford paid plaintiff temporary workmen's compensation for a period of thirty weeks, from September 15, 1973 through April 12, 1974. This is an admission against interest which can be rebutted. *Michael v. Bauman,* 76 N.M. 225, 413 P.2d 888 (1966); *Johnson v. J. S. & H. Construction Co.,* 81 N.M. 42, 462 P.2d 627 (Ct.App.1969). On June 20, 1973, Hartford received a final report from its doctor which stated that "Mr. Herrera cannot in any way work around paints, because of the allergies sustained to them both pulmonary and renal."

Defendants offered no evidence to rebut the admission against interest which was sufficient to support an award of compensation.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

In my opinion the plaintiff failed to establish a compensable claim under our Occupational Disease Disablement Act.

Section 59–11–20, N.M.S.A.1953 (2nd Repl.Vol. 9, Part 1) provides:

"The occupational diseases hereinafter defined shall be deemed to arise out of the employment, only if there is a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence. In all cases where the defendant denies that an alleged occupational disease is the material and direct result of the conditions under which work was performed, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation benefits shall be based on speculation or on expert testimony that as a medical possibility the casual connection exists."

Section 59–11–34, N.M.S.A.1953 (2nd Repl.Vol. 9, Part 1) provides:

"In all cases where injury results by reason of an accident arising out of or in the course of employment, no compensation under this act [59–11–1 to 59–11–42] shall be payable, nor shall any compensation be payable under the Workmen's Compensation Act [59–10–1 to 59–10–37] for any occupational disease."

The plaintiff went to work for the defendant, Fluor Utah, Inc., on Monday, September 9, 1973. He testified that by that evening he was experiencing chest pains. On Tuesday his stomach was very upset and he couldn't eat. The chest pains continued and he was vomiting. Symptoms on Wednesday and Thursday were worse; he felt exhausted. On Friday he worked from 7:00 to 9:00 A.M. When he could no longer work, he was taken to the Grant County Medical Center.

Of the four and a half days that plaintiff worked for the defendant, all but twenty minutes of that time was spent painting outdoors between fifty and eighty feet above the ground. The twenty minute

period was spent painting indoors. The plaintiff did not know what kind of paint he was using. Dr. Novosad obtained a label from one of the paint cans, but it did not give any information as to the composition of the paint. The only information the plaintiff was able to give his doctor was that it had a very strong odor. None of the four doctors who examined the plaintiff gave him any tests to determine whether he was allergic to paint and, if so, what kind. Dr. Novosad said he was afraid to test him for fear of the reaction that might be produced.

Plaintiff told Dr. Smith, one of the doctors who examined him on behalf of defendants, that approximately three years before the time in question he had developed a rash. An allergist he consulted told him he was sensitive to wool and mold. He told Dr. Novosad, his personal physician, that about six years previously he had had an asthmatic-type attack. What this attack was due to the record does not disclose.

Plaintiff had worked as a painter since 1969. During those years he had used various kinds of paint, stain, varnish, paint thinners, etc. He was asked the following question:

"Q. Okay. Now, up to this point [the days in question] had you ever gotten sick being around paint or paint fumes, had any reaction to that?

A. Never. Never."

Dr. Novosad first saw the plaintiff on September 24, 1973 and treated him for several months. When questioned as to his findings, he said that at that time plaintiff had rhinitis, chronic bronchitis, or stated in another way, reactive small tubular disease, flank pains, and some renal involvement due to his allergic reaction to paint. As a conclusion he stated: "I personally, medically feel, unequivocally that he has an occupational disease and that he is allergic to paint."

There is no doubt that plaintiff suffered an acute allergic reaction to something. However, to say that this was a reaction to paint is sheer speculation. He had not, ac-cording to his own testimony, suffered any reaction to paint before. Therefore, a more reasonable, but equally speculative inference to be drawn from these circumstances is that his reaction was due to some airborne pollen or dust, or perhaps that he came in contact with some wool or mold somewhere.

As can be seen, § 59–11–20, supra, includes the specific prohibition that "No award of compensation benefits shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists."

Section 59–11–20, supra, gives the definition of an occupational disease as including ". . . any disease *peculiar to the occupation* in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such . . . ." [Emphasis mine]. There is nothing in this record which indicates that an acute allergic reaction with the usual attendant results is peculiar to the occupation of painting. I believe that plaintiff's injury and disability did not ensue because of an "exposure occasioned by the nature of the employment" as required by § 59–11–20, supra, but because of plaintiff's allergic sensitivity. In my opinion the trial court drew the wrong legal conclusions from the facts stated.

I think that the plaintiff may have misjudged his remedy and that his claim more correctly comes under our Workmen's Compensation Act. An injury accidentally sustained by a workman in the course of his employment is compensable even though it would not have occurred had not the employee been predisposed to such an injury through some preexisting physical defect or condition. See *Reynolds v. Ruidoso Racing Association, Inc.*, 69 N.M. 248, 365 P.2d 671 (1961). I believe that his complaint contains all of the essential allegations for a claim under our Workmen's Compensation Act, with possible minor amendments. See *Holman v. Oriental Refinery*, 75 N.M. 52, 400 P.2d 471 (1965). I would therefore remand this case to trial court with instructions to reconsider as a claim under our Workmen's Compensation Act.