601 P.2d 425

Ramon J. MARTINEZ, Petitioner,

v.

UNIVERSITY OF CALIFORNIA, Employer, and Royal Glove Insurance Company, Insurer, Respondents.

No. 12463.

Supreme Court of New Mexico.

Sept. 26, 1979.

Rehearing Denied for Respondents Oct. 19, 1979.

Rehearing Granted for Petitioners Oct. 22, 1979.

Jones, Gallegos, Snead & Wertheim, J. E. Gallegos, Steven L. Tucker, Santa Fe, for petitioner.

Montgomery, Andrews & Hannahs, Frank Andrews, Walter J. Melendres, Santa Fe, for respondents.

OPINION

SOSA, Chief Justice.

Petitioner sought compensation benefits for total permanent disablement under the New Mexico Occupational Disease Disablement Law (hereinafter referred to as the

Act), §§ 52–3–1 to 59, N.M.S.A.1978. The district court concluded that petitioner's disablement was within the meaning of § 52–3–32 and entered judgment in petitioner's favor. Respondents appealed. The Court of Appeals reversed. We granted certiorari, and now reverse the Court of Appeals.

The question we address in this case is whether an employee, who is totally disabled by anxiety neurosis which manifests itself as a phobia that his continued exposure to radioactive materials will cause death, can recover for that disability under the Act. We hold that he can.

The facts of the case are as follows. Petitioner was employed as a foundry technician by the University of California at the Los Alamos Scientific Laboratories (hereinafter referred to as LASL) for approximately thirty years prior to his voluntary retirement. Petitioner's duties consisted primarily of cutting, molding, milling, shaping, and recovering objects made from radioactive materials. Because he was constantly exposed to such materials, petitioner was continually required to wear a film badge for detection of radiation. The articles worn by petitioner, which were designed to protect him from radioactive contamination, were often ineffective to avoid inhalation of vapors and direct contact between his skin and clothing and radioactive materials. Incidences of cancer, fatal illnesses of unknown origin, and blindness among employees in petitioner's division occurred during the years of his employment at LASL.

In February 1976, petitioner had a growth removed from his right eye. The growth was diagnosed as a "Bowen's lesion", which is a localized cancerous growth. Petitioner's treating physicians did not attribute petitioner's eye cancer to his exposure to radioactive materials. Petitioner believed otherwise, and he became severely worried that such cancer would spread throughout his body and cause his death.

When petitioner returned to work following his eye surgery, he began to suffer from headaches, excessive fatigue, dizziness, nausea, and feelings of extreme anxiousness and nervousness. He continued to be exposed to and come in contact with radioactive materials. Petitioner's illness increased to a point that he was totally unable to work. He terminated his employment with LASL in July 1976. Petitioner then sought compensation benefits under the Act.

The district court found that petitioner suffers from anxiety neurosis, an emotional disorder involving petitioner's inability to cope with continued exposure to or contact with radioactive materials. There is no organic cause of the symptoms. The court also found that petitioner's anxiety neurosis followed as a natural incident of his work with LASL, which entailed exposure to radioactive materials, and that such exposure could fairly be traced to the employment as a proximate cause. Finally, the court found that petitioner's inability to perform his job as a foundry technician is a permanent condition.

The court concluded that petitioner's neurosis is an occupational disease within the meaning of § 52–3–33, and that petitioner suffers from a disablement within the meaning of § 52–3–4(A). The court further concluded, by expert medical testimony, that a direct causal connection had been established as a matter of medical probability between the conditions under which petitioner performed his work and the occupational disease which he incurred.

The Court of Appeals concluded that petitioner's neurosis was not an occupational disease within the meaning of § 52–3–33. We reverse.

Section 52–3–33 provides that an occupational disease

> includes any disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such and includes any disease due to, or attributable to, exposure to or contact with any radioactive material by an employee in the course of his employment.

Whether petitioner's anxiety neurosis is an occupational disease "depends upon whether there is a recognizable link between the disease and some distinctive feature of" his job as a foundry technician. *Gaddis v. Rudy Patrick Seed Division*, 485 S.W.2d 636, 639 (Mo.App.1972).

There is no doubt that anxiety neurosis can be a work-connected injury compensable under the Workmen's Compensation Act, §§ 52–1–1 to 69, N.M.S.A.1978. *Ross v. Sayers Well Servicing Company*, 76 N.M. 321, 414 P.2d 679 (1966); *Jensen v. United Perlite Corporation*, 76 N.M. 384, 415 P.2d 356 (1966). By analogy, petitioner's anxiety neurosis should be equally compensable under the Occupational Disease Disablement Law if it is established that his neurosis is peculiar to his occupation, is due to causes in excess of the ordinary hazards of employment as such, and is attributable to exposure to or contact with radioactive materials in the course of his employment. In addition, it must be established that there is a

> direct causal connection between the conditions under which [petitioner's] work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause.

§ 52–3–32.

▇ Respondents argue that petitioner's neurosis is not "peculiar to" his occupation as a foundry technician at LASL because persons in other occupations also suffer from anxiety neurosis. We find that the term "peculiar to" in § 52–3–33 does not mean "exclusive to." The phrase "peculiar to" is not

> used in the sense that the disease must be one which originates exclusively from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations . . . .. (Citation omitted.)

*Glodenis v. American Brass Co.*, 118 Conn. 29, 170 A. 146, 150 (1934), quoted favorably in *Herrera v. Fluor Utah, Inc.*, 89 N.M. 245, 247, 550 P.2d 144, 146 (Ct.App.1976), *cert. denied*, 89 N.M. 321, 551 P.2d 1368 (1976). *See also Bowman v. Twin Falls Const. Co., Inc.*, 99 Idaho 312, 581 P.2d 770 (1978).

In *Gaddis, supra*, the Missouri Court of Appeals found that bronchiectasis was an occupational disease because it involved a "peculiar risk or hazard which inheres in the work conditions, and [is] a disease which follows as a natural result of exposure to such occupational risk, an exposure which is greater or different than affects the public generally . . . ." 485 S.W.2d at 639. In *Herrera, supra*, an afflicted painter was allowed to receive benefits under the Act, notwithstanding the fact that many persons who are not painters may also develop allergic disorders to paint.

▇ We hold that petitioner is not required to show that anxiety neurosis is suffered exclusively by members of his occupation in order for him to qualify for benefits under the Act. To hold otherwise would impose an unreasonable burden on employees suffering from a disabling disease and would do injustice to beneficent legislation.

▇ The record establishes that while employed by respondents, petitioner was afflicted with cancer. He was engaged in an occupation in which an excessive hazard of radiation existed. He was exposed to such radiation over his thirty years of employment at LASL. As a result of these circumstances, petitioner's disabling disease, anxiety neurosis, was triggered. We find that the highly toxic and dangerous materials petitioner worked with, coupled with the incidences of cancer, blindness, and fatal illness among petitioner's fellow workers, provides a "recognizable link" between his neurosis and his occupation as a foundry technician. *See Gaddis, supra*.

In conclusion, we quote the following language from Judge Walters' dissenting opinion.

> If the claimant is incapable, by reason of his inability to view rationally his disa-

bling condition and its genesis, how is he any less disabled than one who, in full possession of his reasoning powers, can see and perceive a severed limb or a mangled arm? Or one who can feel his life ebbing away from a known cancer induced by over-exposure to work-related radiation? We would make claimants with mental debilities more responsible for their psychic weaknesses which to them, at least, in their disordered mental states, are directly related to their work conditions, than those claimants who suffer encroachments of physical disease upon susceptible or weak body organs and musculo-skeletal structures as a result of *their* work environments. This is not logical; it is not humanitarian; it is not heedful of developments in medical science which recognize that some mental disorders are, indeed, diseases directly connected with and arising from the worker's perception of his occupational environment. The mental condition is itself a disease.

For the foregoing reasons, we hereby reverse the decision of the Court of Appeals. The district court's decision is affirmed.

IT IS SO ORDERED.

EASLEY, PAYNE and FELTER, JJ., concur.

FEDERICI, J., not participating.