689 P.2d 1272

**Paul Dean KERN, Plaintiff-Appellee,**

v.

**IDEAL BASIC INDUSTRIES, and its wholly owned subsidiary, Potash Company of America, Employer and Self-Insurer, Defendants-Appellants.**

No. 7912.

Court of Appeals of New Mexico.

Sept. 25, 1984.

Certiorari Denied Oct. 29, 1984.

James L. Dow, Lesley S. Williams, Dow & Feezer, P.A., Carlsbad, for plaintiff-appellee.

Jay W. Forbes, Michael E. Dargel, McCormick & Forbes, Carlsbad, for defendants-appellants.

## OPINION

WOOD, Judge.

Defendants moved to dismiss the complaint seeking worker's compensation benefits for failure to state a claim upon which relief could be granted. Depositions were considered at the hearing on the motion; thus the motion is to be treated as a motion for summary judgment. NMSA 1978, Civ. P.R. 12(b) (Repl.Pamp.1980). The trial court denied the motion. This court granted an interlocutory appeal. The issue, as stated in the trial court's order, is whether plaintiff may recover worker's compensation benefits "because Plaintiff suffered a mental breakdown from being terminated from Defendants [sic] employ." The uncontradicted showing in the depositions is that plaintiff suffered a major reactive depression, had psychotic episodes, attempted suicide and was disabled.

Plaintiff had worked for defendants for fifteen years. At the time of termination, plaintiff was employed as a safety engineer. On December 1, 1982, plaintiff reported to and was answerable to Frank Miller. On December 1, 1982, plaintiff, while at work, was called to Miller's office and notified that he was terminated. The effective date of termination was January 15, 1983; plaintiff's last day on the job was January 10, 1983. However, the uncontradicted showing was that plaintiff's mental health began deteriorating shortly after December 1, 1982.

A physician deposed: "It was the loss of the job in my opinion that precipitated and caused the depression and the psychosis.... I think his [plaintiff's] symptoms and his illness was caused ... by the trauma that he suffered at the loss of the job, not based on the job itself." The physician also deposed that loss of a job "is something everybody has to face" and agreed that loss of a job is not peculiar to employees in the potash industry, nor peculiar to safety engineers, but encompasses almost every type of occupational pursuit.

In order to obtain compensation benefits, plaintiff must have sustained an accidental injury. NMSA 1978, §§ 52-1-9 and 52-1-28. Defendants contend that the mental breakdown plaintiff suffered as a result of his employment being terminated did not

amount to an accidental injury. Plaintiff contends that his mental breakdown comes literally within the definition of accidental injury stated in *Gilbert v. E.B. Law & Son, Inc.*, 60 N.M. 101, 287 P.2d 992 (1955). We do not decide this appeal on the basis of the "accidental injury" requirement. However, see the special concurrence in *Hernandez v. Home Education Livelihood Program, Inc.*, 98 N.M. 125, 645 P.2d 1381 (Ct.App.1982); *In re Korsun's Case*, 354 Mass. 124, 235 N.E.2d 814 (1968). We assume, but do not decide, that plaintiff suffered an accidental injury.

For an accidental injury to be compensable, the accidental injury must arise out of the employment and the accident must be reasonably incident to the employment. Section 52–1–28. As stated in Section 52–1–9(B), "at the time of the accident, the employee is performing service arising out of ... his employment[.]" The "arising out of" and "incident to" employment requirements have been repeatedly defined. Plaintiff relies on the definition in *Adamchek v. Gemm Enterprises, Inc.*, 96 N.M. 24, 627 P.2d 866 (1981), emphasizing that "arising out of" is concerned with a "cause." He points out that the injury must be caused by a risk to which the worker was subjected by his employment. While this is an accurate general statement, *see Velkovitz v. Penasco Independent School District*, 96 N.M. 577, 633 P.2d 685 (1981), it fails to consider that a "risk to which the worker was subjected by his employment" has been more precisely defined.

*Adamchek*, upon which plaintiff relies, points out that the causal connection of "arising out of" involves the connection between the conditions under which the work is required to be performed and the resulting injury. *Wilson v. Richardson Ford Sales, Inc.*, 97 N.M. 226, 228, 638 P.2d 1071 (1981), refers to a " 'risk incident to the work itself.' " *Berry v. J.C. Penney Co.*, 74 N.M. 484, 485–86, 394 P.2d 996 (1964), explains "risk incident to the work" as a "risk peculiar to the employment" and states that the employment must contribute to the risk. *Williams v. City of Gal-*

*lup*, 77 N.M. 286, 421 P.2d 804 (1966), states that the employment must contribute something to the hazard. *Gilbert v. E.B. Law & Son, Inc.*, 60 N.M. 101, 287 P.2d 992 and *Barton v. Skelly Oil Co.*, 47 N.M. 127, 138 P.2d 263 (1943), refer to a risk increased by the circumstances of the employment. *See Luvaul v. A. Ray Barker Motor Co.*, 72 N.M. 447, 384 P.2d 885 (1963).

As *McDaniel v. City of Albuquerque*, 99 N.M. 54, 55, 653 P.2d 885 (Ct.App.1982), states: "The 'arising out of' requirement excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause; the causative danger must be peculiar to the work ...." *See also Schober v. Mountain Bell Telephone*, 96 N.M. 376, 630 P.2d 1231 (Ct.App.1980); *Gutierrez v. Artesia Public Schools*, 92 N.M. 112, 583 P.2d 476 (Ct.App.1978). *Cf. Martinez v. University of California*, 93 N.M. 455, 601 P.2d 425 (1979).

Plaintiff's answer brief states: "It is clear that the possibility of being fired is a risk to which Paul Kern was subjected by his employment. He would not be at such risk if he were not employed." This argument fails to consider that the risk that the employment might be terminated was not a risk incident to the performance of plaintiff's work, and was not peculiar to plaintiff's employment.

*In re Korsun's Case* states:

Apprehension over the prospect of losing one's job does not arise "out of the nature, conditions, obligations or incidents of the employment." ... Rather it is a state of mind which arises from the common necessity of working for a living. Social legislation designed to relieve the consequences of losing one's job is found elsewhere.

235 N.E.2d at 816 (citations omitted).

*Chapman v. Aetna Casualty & Surety Co.*, 221 Tenn. 376, 426 S.W.2d 760, 762 (1968), states:

[T]he stress mentioned in this record as contributing in any sense to deterioration of Mr. Chapman's condition to the point

of fatality is not referable to the employment ... but rather, and only, to the inevitable termination of such employment....

....

This record is devoid of any material evidence to support the finding ... that the deceased's death arose out of his employment.

*City of Austin v. Johnson,* 525 S.W.2d 220, 221 (Tex.Civ.App.1975), pointed out that a risk incidental to employment must be connected with what a worker has to do in performing a contract of service, and held: "To hold that worry and anxiety over job loss is 'connected with what a workman has to do in performing his contract of service' would in our opinion not be reasonable."

*Seals v. City of Baton Rouge,* 94 So.2d 478, 484–85 (La.Ct.App.1957), states:

[T]he notice of forced retirement or acceptance of disability benefits and resulting thrombosis had nothing whatsoever to do with the services being performed or to be performed, which he was employed to do, for his employer.... [T]he letter [recommending that the employee request a disability pension with the alternative that his disability would be brought to the attention of the Civil Service Board] ... had nothing whatsoever to do with services to be performed by Captain Seals for and on behalf of the City of Baton Rouge, but only had something to do with his retirement and had no connection whatsoever with work to be performed.... [T]he accident must have some causal connection with the employment, that is to say, with the service being performed or to be performed in the furtherance of the work of the employment or growing out of said employment....

....

... If we followed plaintiff's contention and theory in this case, every employer in this state would be in a quandry and stalemate as to the discharge or forced retirement of any of its employees who it may know or not know of having coronary complications. If the employer was forced to discharge an employee due to economic reasons, said discharge may cause mental worry and agitation, and as a result, cause coronary thrombosis. The same is likewise true with reference to informing an employee of his forced retirement or for his disability retirement. In either event, if, as a result of the discharge or notice to the employee of forced retirement or disability retirement (such as what took place in the case at bar), the employee develops a thrombosis and dies as a result, the employer would be liable for compensation. We do not believe the legislature ever intended that situation to exist.

Plaintiff did not suffer an accidental injury arising out of his employment. The trial court's order is reversed. The cause is remanded with instructions to grant defendants' motion for summary judgment.

This being an appeal by the employer in a worker's compensation case, no appellate costs are awarded.

**IT IS SO ORDERED.**

DONNELLY, C.J., and NEAL, J., concur.