598 P.2d 654

**Robert McDONALD, Plaintiff-Appellant,**

v.

**KERR–McGEE CORPORATION, Defendant-Appellee.**

No. 3741.

Court of Appeals of New Mexico.

July 17, 1979.

Benjamin S. Eastburn, Hynes, Eastburn & Hale, Farmington, for plaintiff-appellant.

George W. Kozeliski, Glascock, McKim & Head, Gallup, for defendant-appellee.

OPINION

ANDREWS, Judge.

This is an appeal from a summary judgment order of the District Court of McKinley County dismissing the plaintiff's claim for benefits under the New Mexico Occupational Disease Disablement Law. The decisive question is whether the employer should be estopped from raising § 52–3–10(A)(2), N.M.S.A.1978 as a defense where it knew at the time it hired plaintiff that he was suffering from an occupational disease, but did not tell him.

Plaintiff, Robert McDonald, a forty-one year old Navajo applied for a job as a uranium miner with defendant-employer, Kerr-McGee on May 27, 1975. McDonald had worked as a uranium miner for the previous nineteen years in the State of Colorado. Since McDonald neither spoke nor wrote English, he was assisted in applying for the position by Kerr-McGee employee Harry Jackson, who acted as interpreter. About two days later, McDonald returned to Jackson's office and was given an appointment for a physical examination which, he was told, he would have to pass in order to be hired. He took his physical examination June 4. On June 5, McDonald returned to the mine and spoke to Jackson who did not yet know the results of the application. While McDonald waited, Jackson made a phone call and then told McDonald that since he had not heard anything, "everything must be all right." McDonald was photographed for an identification card and went to work June 6, 1975.

Part of the June 4 examination involved x-rays, the results, of which were reported by Dr. Ritter, the examining physician, as "pneumoconiosis—(silicosis?)." However, McDonald was not told at the time of his hiring nor at any time afterward that he had this condition. Kerr-McGee admits that "[a]t the time Defendant hired Plain-

tiff, Defendant had knowledge of Dr. Ritter's report and of Dr. Ritter's conclusions therein", but "nonetheless hired Plaintiff to work in Defendant's mines. . . . "

On March 24, 1977, and April 15, 1977, McDonald was examined by separate U.S. Public Health Service doctors who both concluded that because he suffered from silicosis he "should not work underground", and that he was incapacitated from further work in the mines. Kerr-McGee raises § 52–3–10(A)(2), as a defense to paying benefits under the New Mexico Occupational Disablement Law:

[N]o compensation shall be paid in case of silicosis or asbestosis unless during the ten years immediately preceding the disablement the injured employee shall have been exposed to harmful quantities of silicon dioxide dust or asbestos dust for a total period of *no less than twelve hundred fifty work shifts in employment in this state*, and unless disablement results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed. For the purpose of computing work shifts under this section, employment for less than one-half of a normal shift shall be disregarded, and employment for one-half or more of a normal shift shall be deemed a full shift. (Emphasis added.)

If Kerr-McGee is permitted to rely on the emphasized portion of this provision, it is dispositive of this cause. To avoid this result, the employee asserts that the employer should be estopped from raising such defense where its conduct has induced the employee to "forbear from doing, something he would not have done but for such conduct." *Tome Land & Improvement Co. v. Silva*, 83 N.M. 549, 494 P.2d 962 (1972).

■ Applying estoppel to a proceeding under the New Mexico Occupational Disease Disablement Law is a matter of first impression. However, the doctrine has been applied in cases arising under the

Workmen's Compensation Act after which it is closely patterned.[1] As stated in *Anaya v. City of Santa Fe*, 80 N.M. 54, 451 P.2d 303 (1969):

Even though our Workmen's Compensation Act does not specifically provide for equitable defenses, nevertheless, this court has considered equitable claims and defenses in workmen's compensation proceedings. *Tocci v. Albuquerque & Cerrillos Co.*, 45 N.M. 133, 112 P.2d 515 (1941)— fraud or mutual mistake; *Hudson v. Herschbach Drilling Co.*, 46 N.M. 330, 128 P.2d 1044 (1942)—incapacity to contract; *Lance v. New Mexico Military Institute*, 70 N.M. 158, 371 P.2d 995 (1962)—estoppel; *Winter v. Roberson Construction Co.*, 70 N.M. 187, 372 P.2d 381, 96 A.L.R.2d 933 (1962)—question of whether plaintiff was estopped; *Herrera v. C & R Paving Co.*, 73 N.M. 237, 387 P.2d 339 (1963)—fraud and misconduct; *Durham v. Gulf Interstate Engineering Co.*, 74 N.M. 277, 393 P.2d 15 (1964)—fraud or other inequitable conduct; *Thomas v. Barber's Super Markets, Inc.*, 74 N.M. 720, 398 P.2d 51 (1964)—fraud, undue influence, misrepresentation or coercion; *Gray v. J. P. (Bum) Gibbins, Inc.*, 75 N.M. 584, 408 P.2d 506 (1965)—fraud. These cases are cited to show that equitable considerations apply to workmen's compensation claims and defenses and may be applied to the instant case. 80 N.M. 54 at 56, 451 P.2d 303 at 305.

Pursuant to this authority, we conclude, by analogy, that if the elements of estoppel are established, the doctrine can be applied in a case arising under the New Mexico Occupational Disease Disablement Law.

There are certain essential elements which usually exist in order to constitute an equitable estoppel:

There must be conduct—acts, language or silence—amounting to a representation or concealment of material facts. These must be known to the party estopped at the time of his said conduct, or at least

---

1. *See Salazar v. Kaiser Steel Corporation*, 85 N.M. 254, 511 P.2d 580 (Ct.App.1973), cert. denied 85 N.M. 229, 511 P.2d 555.

the circumstances must be such that knowledge of them is necessarily imputed to him. The truth concerning these facts must be unknown to either party claiming the benefit of the estoppel at the time when such conduct was done and at the time when it was acted upon by him. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and proper that it will be acted upon. The conduct must be relied upon by the other party, and thus relying, he must be led to act upon it. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights consistent with it. *Chambers v. Bessent*, 17 N.M. 487, 134 P. 237 (1913).[2]

*See also Tome Land & Improvement Co. v. Silva, supra; Porter v. Butte Farmers Mutual Insurance Company*, 68 N.M. 175, 360

---

**2.** Compare *Dye v. Crary*, 13 N.M. 439, 85 P. 1038 (1906), requiring that five specific ele-

P.2d 372 (1961); *State v. City Council of Hot Springs*, 56 N.M. 118, 241 P.2d 100 (1952).

 Whether or not the conduct of Kerr-McGee constitutes estoppel, thereby precluding its reliance on the defense available under § 52–3–10(A)(2) can be determined only through an analysis of the facts. The district court has not yet had an opportunity to review the facts pertinent to this issue. We therefore reverse and remand for proceedings to establish whether or not the conduct of Kerr-McGee constitutes estoppel, acted upon by McDonald to his detriment; and if so, whether McDonald has a "disablement" as defined in § 52–3–4(A), N.M.S.A.1978.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.

---

ments be present in order to constitute an estoppel by conduct.