755 P.2d 85

**Evelyn FAHR, Claimant–Appellee, Cross–Appellant,**

v.

**AARON McGRUDER TRUCKING, Employer and Mountain States Mutual Casualty Company, Insurer, Respondents–Appellants, Cross–Appellees.**

**No. 10455.**

Court of Appeals of New Mexico.

May 3, 1988.

Mark J. Riley, Padilla, Riley & Shane, P.A., Albuquerque, for respondents-appellants, cross-appellees.

Duane Lind, Ferguson & Lind, P.C., Albuquerque, for claimant-appellee, cross-appellant.

OPINION

BIVINS, Judge.

Employer appeals the hearing officer's decision awarding disability benefits to claimant in a worker's compensation case. Claimant cross-appeals from the decision as well. Our first calendar notice proposed summary dismissal of employer's appeal on the ground that its notice of appeal had not been timely filed in this court. We also proposed summary affirmance of the hearing officer's decision regarding the issues raised in claimant's cross-appeal. Employer subsequently moved for an extension of time within which to file its notice of appeal in this court. We granted the motion pursuant to SCRA 1986, 12–201(E)(4) and 12–601(B). Claimant did not file a memorandum in opposition to our first calendar notice. Therefore, she abandoned the issues raised by her cross-appeal. *State v. Martinez,* 97 N.M. 585, 642 P.2d 188 (Ct.App. 1982). Our second calendar notice proposed summary affirmance of the hearing officer's decision regarding the issue raised by employer in its docketing statement. Claimant filed a memorandum in support of

our proposed disposition. Employer filed a memorandum in opposition to our proposed disposition. Not persuaded by employer's memorandum, we affirm the hearing officer's decision.

The issue raised by employer concerns the meaning of the phrase "number of days * * * employed" contained in NMSA 1978, Section 52–1–20(B)(5) (Repl.Pamp.1987) for purposes of computing claimant's average daily and weekly wages pursuant to that section and Section 52–1–20(B)(3). Our second calendar notice proposed to find that this phrase means number of days actually worked.

Section 52–1–20(B)(3) provides that average weekly wages for the purpose of computing benefits are to be determined in the following manner:

[W]here the employee is rendering service on a per diem basis, the weekly wage shall be determined by multiplying the daily wage by the number of days and fractions of days in the week during which the employee under a contract of hire *was working* at the time of the accident, or would have worked if the accident had not intervened; provided, however, that in no case shall the daily wage be multiplied by less than three for the purpose of determining the weekly wage[.] [Emphasis added.]

Section 52–1–20(B)(5) provides:

[W]here the employee is paid on a piecework, tonnage, commission or any other basis except upon a monthly, weekly, daily or hourly wage, and where the employment is but casual and in the usual course of the trade, business, profession or occupation of his employer, the total amount earned by the injured or killed employee in the twelve months preceding the accident shall be computed, which sum shall be divided by the *number of days the injured person was employed* during the twelve months immediately preceding the accident, and the result thus ascertained shall be considered the average daily wage of said employee; then the weekly wage shall be determined from said daily wage in the manner set forth in Paragraph (3) [of Section 52–1–20(B)(3) ] hereof[.] [Emphasis added.]

The hearing officer found claimant's average weekly wage to be $230.41. Employer argues that claimant's average weekly wage should be $162.15.

Claimant was hired on December 4, 1986, and her accident occurred on December 31, 1986. Therefore, a total of 27 days elapsed between claimant's hiring date and the date immediately preceding the accident. Claimant was paid on a per-mile basis. It is undisputed that claimant's gross earnings for this period were $875.58. It is also undisputed that claimant actually worked for employer on 19 of the 27 days. Finally, the parties agree that claimant worked the equivalent of a five-day workweek for purposes of computing her weekly wages under Section 52–1–20(B)(3).

Employer contends that the "was working" language of Section 52–1–20(B)(3) is not synonymous with the "number of days * * * employed" language of Section 52–1–20(B)(5). We disagree.

In interpreting a statute, we ascertain the legislative intent from the language used and words will be given their ordinary meaning unless a different intent is clearly indicated. *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (1985). In determining the legislative intent, we look not only to the language of the statute, but also to the object sought to be accomplished and the wrong to be remedied. *Id.* Finally, statutes "must be construed so that no word and no part of the statute is rendered surplusage or superfluous." *Vaughn v. State Taxation & Revenue Dep't*, 98 N.M. 362, 366, 648 P.2d 820, 824 (Ct.App.1982).

Applying the above rules, we find that the phrase "number of days * * * employed" means the actual number of days claimant worked for employer before the accident.

The purpose of average weekly wage statutes "is to arrive at a realistic estimate of the worker's true weekly earning potential so that the benefits calculable thereon may fairly relate to the worker's loss attributable to the accident or death * * *."

82 Am.Jur.2d *Workmen's Compensation* § 368 at 161 (2d ed.1976). Calculating claimant's average daily wage by dividing gross earnings by the number of days elapsing between the date of hiring and the day prior to the accident would not demonstrate her true earning potential. Further, we find that the plain meaning of the phrase "number of days * * * employed" refers to the number of days actually worked, not the state of being employed as employer suggests. *Webster's Third New International Dictionary* 743 (1966) defines "employ" as "to provide with a job that pays wages or a salary or with a means of earning a living." As used in the context of Section 52–1–20(B)(5), we believe that the number of days employed is limited to the days the worker engages in work for the employer and for which he is paid. We believe this interpretation is consistent with the purpose of average weekly wage statutes, especially where wages are based upon the worker's output. *See Johnson v. D.B. Rosenblatt, Inc.*, 265 Minn. 427, 122 N.W.2d 31 (1963). *See generally* 99 C.J.S. *Workmen's Compensation* § 292 (1958).

Employer's argument also works an injustice upon workers employed on other than a monthly, weekly, daily or hourly basis. This is best demonstrated by the following example. Worker *A* and Worker *B* are each employed from April 1 through May 1, when each suffers a compensable injury. Worker *A* works 5 days per week for a total of 20 days at a flat daily wage of $45 for gross earnings of $900. Worker *B* also works 5 days per week for a total of 20 days with gross earnings of $900; the only difference being that Worker *B* is paid on a piecework basis (i.e., a basis other than monthly, weekly, daily or hourly). Worker *A's* average weekly wage is easily computed under Section 52–1–20(B)(3) by multiplying his daily wage of $45 by 5 for a result of $225. Under employer's argument, Worker *B's* average weekly wage is computed as follows: first, the daily wage is calculated pursuant to Section 52–1–20(B)(5) by dividing gross earnings ($900) by the number of days elapsing between the hiring date and the day before the accident (30). The resulting average daily wage of $30 is then multiplied by 5 for an average weekly wage of $150. Thus, even though each worker. worked 5 days per week for a total of 20 days and earned $900, Worker *B* is penalized because he was not paid a flat rate of $45 per day.

Equating the "number of days * * * employed" language with the number of days actually worked, Worker *B's* average weekly wage is calculated as follows: (1) the average daily wage is obtained by dividing gross earnings ($900) by the number of days worked (20) for a result of $45; and (2) the average daily wage of $45 is multiplied by 5 for a resulting average weekly wage of $225, the same figure as for Worker *A*.

Thus, applying the statute to the facts of the instant case, the hearing officer reached the correct average weekly wage figure. Claimant's gross earnings of $875.58 are divided by 19, the number of days she actually worked. This results in an average daily wage of $46.08 pursuant to Section 52–1–20(B)(5). To divide gross earnings by 27, as employer suggests, would unfairly penalize claimant simply because she was paid on a per-mile basis. The average daily wage is then multiplied by 5 to arrive at the average weekly wage of $230.41.

Even were we to accept employer's argument that the plain meaning of the statute would mandate that the "number of days * * * employed" equals the number of days elapsing between the hiring date and the day before the accident, we could not so apply the statute because such a reading would lead to an unjust, absurd or contradictory result. *See Otero v. State*, 105 N.M. 731, 737 P.2d 90 (Ct.App.1987). We will not ascribe to the legislature an intent to compensate injured workers unequally based solely upon the manner in which the employer chooses to pay for the worker's services. To the contrary, Section 52–1–20(C) evidences the legislative intent that the methods of computation *fairly* compute the average weekly wage in all cases.

A survey of those few cases from other jurisdictions similar to this case supports our reading of the statute. In interpreting

a similar statute, the New Jersey Supreme Court construed the phrase " 'the number of days the workman was actually employed' " to mean " 'the number of days on which the workman was actually employed.' " *Davidson v. Nathanson Furniture Stores,* 126 N.J.L. 430, 431, 20 A.2d 61, 62 (1941); *see also Zeitner v. Floair, Inc.,* 211 Kan. 19, 505 P.2d 661 (1973).

Employer argues that equating the "number of days * * * employed" language with the number of days actually worked renders the "was working" language of Section 52–1–20(B)(3) surplusage or superfluous. We disagree. The "was working" language refers to the claimant's workweek while the "number of days * * * employed" language refers to the claimant's term of employment. We see no reason why the two phrases should not coexist and be given their ordinary meanings. *See Schmick v. State Farm Mut. Auto. Ins. Co.*

Employer argues that the hearing officer used an improper method to calculate the average daily wage because there was no finding as to this issue. We answer this contention by saying that we will uphold a decision by the trier of fact if it is correct for any reason and will not reverse when the correct result is reached. *See Otero v. State.*

For the foregoing reasons, the decision of the hearing officer is affirmed. Although claimant was unsuccessful in her cross-appeal, we award her the sum of $150 as attorney fees for defending against employer's appeal.

IT IS SO ORDERED.

FRUMAN and APODACA, JJ., concur.