828 P.2d 416

**KENNECOTT COPPER CORPORATION, Claimant–Appellant,**

v.

**Fabian CHAVEZ, Superintendent of Insurance, and the New Mexico Subsequent Injury Fund, Respondents–Appellees.**

No. 12962.

Court of Appeals of New Mexico.

Jan. 14, 1992.

Certiorari Denied March 23, 1992.

Charles E. Stuckey, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for claimant-appellant.

Nathan H. Mann, Doris W. Eng, Gallagher, Casados & Mann, P.C., Albuquerque, for respondents-appellees.

## OPINION

APODACA, Judge.

This appeal involves the denial by the Workers' Compensation Judge (judge) of a claim by Kennecott Copper Corporation (employer), a self-insured entity, against the New Mexico Subsequent Injury Fund and Fabian Chavez, Superintendent of Insurance (collectively referred to as the Fund), for reimbursement of workers' compensation benefits paid by employer to Domingo Misquez (worker). Employer raises three issues on appeal: the judge erred in (1) determining that worker's injury was a continuing injury, not a subsequent injury for which the Fund was liable; (2) determining when the statute of limitations for the filing of employer's claim began to run; and (3) refusing to admit as

evidence, or take judicial notice of, the findings from the underlying workers' compensation claim to determine the liability of the Fund. We hold that there is not substantial evidence to support the judge's finding that worker's injury was a continuing injury, and not a subsequent injury, and we also hold that employer's claim was not barred by the statute of limitations. We therefore reverse the judge's order dismissing employer's claim and remand for further proceedings to determine apportionment between employer and the Fund. In light of our disposition, we need not address the remaining issue.

BACKGROUND

Worker was employed as a tire repairman at one of employer's mines from 1951 until November 17, 1984. In October 1963, worker suffered an on-the-job injury that fractured the metatarsal bones in his left foot. He returned to work in December 1963. In June 1974, worker had the damaged bones in his foot fused to alleviate pain. He returned to work in September 1974 and was asymptomatic at that time.

After five years, worker's foot began to hurt again. In November 1983, he consulted the company's doctors about the pain in his foot. On December 2, 1983, worker's attorney wrote a letter to employer "to place Kennecott on notice of what appears to be a continuing accident with the aggravation of his condition." Worker saw Dr. Boggiano, who notified employer that worker was 20% impaired in his left foot because of the bone fusion and developing osteoarthritis. Employer approved Dr. Boggiano's bill for payment under its workers' compensation coverage. Additionally, employer paid worker workers' compensation benefits for the time that he missed in December 1983, noting the payment in its records as additional compensation for the original 1963 accident and not as compensation for a new accident. All checks for compensation and medical benefits note that payment was for the 1963 accident.

Worker continued to work until November 1984. On November 8, 1984, worker was warned by his supervisor for "loafing." In response, worker told his supervisor that his feet bothered him. Worker was subsequently seen by several doctors and did not work after November 17, 1984. After the disability manifested itself in November 1984, employer paid worker at the 1984 compensation rate, although the records reflected payments as additional compensation for the 1963 accident. Employer filed its claim for reimbursement from the Fund on November 16, 1988.

The workers' compensation judge who presided at the hearing on worker's claim for workers' compensation benefits against employer found that worker had suffered a compensable injury "in 1984 to his left foot, aggravating the pre-existing condition." At the later hearing to determine whether employer should be reimbursed by the Fund, which is the proceeding appealed from, the judge refused to admit or take judicial notice of the findings from the earlier proceeding. The doctors who had examined worker testified at the hearing on employer's claim against the Fund that worker's work aggravated his pre-existing condition and that there was no new trauma.

After trial, the judge made the following pertinent findings:

5. After the 1974 surgery, Mr. Misquez returned to work but never felt fine and his condition gradually got worse.

6. On December 02, 1983, Mr. Misquez, through his attorney, Anthony Avallone, wrote to Kennecott placing it "on notice of what appears to be a continuing accident with the aggravation of his condition."

7. On December 15, 1983, Mr. Misquez was seen again by Dr. Boggiano. Dr. Boggiano's notes state that he did well after surgery until 1981, and thereafter the pain began and gradually increased. Dr. Boggiano told Mr. Misquez not to operate the forklift or truck while on pain medication, not to lift, and to stay off his feet as much as possible. Dr. Boggiano would have told Mr. Misquez to change areas of work due to his foot problem, except for the fact

that Mr. Misquez had already announced his intention to Dr. Boggiano of retiring in the near future. Dr. Boggiano sent his complete report to Kennecott.

8. Dr. Ceralo was of the opinion that Mr. Misquez was permanently, partially disabled by 1983, and by partially disabled he meant affecting his ability to do his work as a tire repairman.

9. Domingo Misquez suffered no accidental injury or accident arising out of and in the course of this employment in 1984.

10. Kennecott Copper Corporation had actual knowledge of the pre-existing condition to the left foot and of a partial disability arising out of the subsequent injury by at least November 08, 1984.

The judge rejected Kennecott's requested findings that:

19. Mr. Misquez sustained a gradual and progressive injury to his left foot in November 1984, which aggravated the previous condition in his left foot resulting in a compensable injury [; and]

21. Mr. Misquez's disability is a natural and direct result of the accidents in October 1963 and November 1984, and this causal connection has been established as a medical probability by expert medical testimony.

The judge concluded that the Fund was not liable because there had been no subsequent injury and the statute of limitations had expired in any event.

DISCUSSION

*Existence of a Subsequent Injury.*

We review the judge's decision using the whole record standard of review adopted by our supreme court in *Duke City Lumber Co. v. New Mexico Environmental Improvement Board,* 101 N.M. 291, 681 P.2d 717 (1984). *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). Although "[a] reviewing court may not * * * substitute its judgment for that of the administrative agen-

cy," *id.* at 129, 767 P.2d at 368, and must view the evidence "in the light most favorable to the agency decision," *National Council on Compensation Insurance v. New Mexico State Corporation Commission,* 107 N.M. 278, 282, 756 P.2d 558, 562 (1988), whole record review requires the reviewing court to consider "all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result." *Tallman,* 108 N.M. at 128, 767 P.2d at 367. The conclusion reached by the agency must be supported by "evidence that is credible ... and that is sufficient for a reasonable mind to accept as adequate." *National Council on Compensation Ins. v. New Mexico State Corporation Comm'n,* 107 N.M. at 282, 756 P.2d at 562. Applying this standard, we hold that the judge's determination that worker did not suffer a subsequent injury is not supported by substantial evidence.

■ It is well settled in New Mexico that a gradual and progressive injury caused by working conditions is compensable under our workers' compensation law. In *Cisneros v. Molycorp, Inc.,* 107 N.M. 788, 765 P.2d 761 (Ct.App.1988), this court held that a worker's gradual hearing loss due to conditions at the workplace was a compensable accidental injury. We stated that "[t]he accidental injury requirement is generally satisfied if either ' "the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties." ' " *Id.* at 791, 765 P.2d at 764. New Mexico has rejected the "specific time, place, and cause" rule. *Id.* at 792, 765 P.2d at 765.

Once a worker is physically impaired, injuries caused by working conditions that aggravate the impairment have been held to be compensable. In *Rader v. Don J. Cummings Co.,* 109 N.M. 219, 784 P.2d 38 (Ct.App.1989), the worker had a preexisting impairment of his lungs. At work, he breathed asbestos and other dust. *Rader* approved the trial court's finding that the dust caused " '*accidental injuries*' " to the worker's lungs that were a compensable injury under the Workmen's Compensa-

tion Act. *Id.* at 225–26, 784 P.2d at 44–45. The court in *Rader* therefore held that a subsequent injury had occurred and that apportionment between the employer and the Fund was proper.

 In this appeal, the doctors testified generally that, although there was no new *specific* trauma, worker's duties as a tire repairman aggravated his foot problem because of the heavy lifting and extensive walking required by the work. It is unnecessary for a specific time, place, and cause of the injury to be determined; the effect of numerous, cumulative injuries is adequate to prove that there is a compensable injury. *Cisneros v. Molycorp, Inc.* Every time worker picked up a heavy tire, another small injury occurred to his foot. Thus, in light of the record as a whole, there is not substantial evidence to support the judge's finding and conclusion that there was no subsequent injury.

*The Statute of Limitations.*

 The judge held that employer had actual notice of the disability by at least November 8, 1984, the date on which worker was warned by his supervisor for "loafing." The judge also concluded that employer's claim (filed on November 16, 1988) was consequently filed more than four years after the statute of limitations began to run and was thus barred. We disagree.

The period of limitations:

begins to run from the time the employer knew or should have known it had a claim against the Fund * * *. In such case, the determinative event is the date an employer is notified of the subsequent injury or, when the injury is latent, the date the employer is notified of the disability arising out of the subsequent injury.

*Hernandez v. Levi Strauss, Inc.*, 107 N.M. 644, 647, 763 P.2d 78, 81 (Ct.App.1988). Additionally, an employer is not held to knowledge that it has a claim against the Fund until it knows that the disability is materially and substantially greater as provided in the Subsequent Injury Act. *Aragon v. Furr's Inc.*, 112 N.M. 396, 815 P.2d 1186 (Ct.App.1991). NMSA 1978, Section

52–2–14 (Repl.Pamp.1991), provides that the limitations period for filing claims against the Fund is only two years "after the employer receives notice of a compensation claim" or "has actual knowledge of a compensation claim." However, because this section applies only to causes of action accruing after its effective date of March 8, 1988, *see Consolidated Freightways, Inc. v. Subsequent Injury Fund*, 110 N.M. 201, 793 P.2d 1354 (Ct.App.1990), and employer's claim accrued before that date, the four-year limitations period provided for in NMSA 1978, Section 37–1–4, is the applicable statutory provision in this appeal. *See Kennecott Copper Corp. v. Chavez*, 109 N.M. 439, 786 P.2d 53 (Ct.App.1990); *Hernandez v. Levi Strauss, Inc.* We must thus determine whether employer filed its claim within four years of the time it had knowledge of a disability that was materially and substantially greater than it would have been without the prior injury.

The judge found that employer had actual knowledge of the potential claim by November 8, 1984, at the latest, apparently relying on the evidence that (1) worker's attorney sent a letter to employer in December 1983; (2) Dr. Boggiano saw worker in December 1983 and sent his medical report to employer; and (3) worker told his supervisor on November 8, 1984, that his feet hurt. For the reasons noted below, we determine that these incidents did not give employer the requisite knowledge of a potential claim against the Fund.

 NMSA 1978, Section 52–2–9 (Repl. Pamp.1991), requires a worker to have incurred a "subsequent disability" before an employer has a claim for apportionment. Thus, the worker must actually be disabled, as that term is defined by our case law, before the employer has a claim against the Fund. A worker is not disabled until his ability to work is impaired. *See Romero v. General Electric Corp.*, 104 N.M. 652, 725 P.2d 1220 (Ct.App.1986). In this appeal, the only evidence that worker was unable to fully perform his duties before November 17, 1984, is the testimony that his supervisor reprimanded him for "loafing" on November 8, 1984. At that

time, worker told his supervisor that his foot was bothering him. The Fund, however, points to worker's visit to Dr. Boggiano in December 1983, Dr. Boggiano's report (sent to employer) stating that worker was 20% impaired, and the letter from worker's attorney, as evidence that employer had notice of any subsequent injury. However, this evidence merely reiterated what employer already knew—that worker was impaired. He was not yet disabled because, as far as employer knew at the time, worker continued to perform all of his duties at work. Worker also continued to perform his duties after November 8, 1984. Not until November 17, 1984, at the earliest, when worker stopped working and retired, was employer placed on notice that worker was actually disabled. Consequently, we hold that employer did not have actual notice of a potential claim against the Fund until November 17, 1984, at the earliest. Employer's claim was therefore filed within the four-year limitations period.

## CONCLUSION

We reverse the judge's order dismissing employer's claim for reimbursement from the Fund and remand for further proceedings to determine apportionment of liability between employer and the Fund.

IT IS SO ORDERED.

PICKARD and FLORES, JJ., concur.