853 P.2d 753

James E. BRYANT, Jr.,
Claimant–Appellee,

v.

**LEAR SIEGLER MANAGEMENT SERVICES CORPORATION and National Union Fire Insurance Company, Respondents–Appellants.**

No. 13486.

Court of Appeals of New Mexico.

April 8, 1993.

Certiorari Denied May 25, 1993.

J. Robert Beauvais, Ruidoso, for claimant-appellee.

Kelly A. Genova, Sarah Curry Smith, C. Christine Osnes, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for respondents-appellants.

Robert M. Aurbach, Albuquerque, for amicus curiae Workers' Compensation Admin.

*OPINION*

APODACA, Judge.

Lear Siegler Management Services Corporation and National Union Fire Insurance Company (collectively referred to as Employer) appeal the order of the Workers' Compensation Judge (Judge) granting James E. Bryant (Worker) benefits for total disability, vocational rehabilitation, medical expenses, and attorney fees under the New Mexico Occupational Disease Disablement Law, NMSA 1978, Sections 52–3–1 to –60 (Repl.Pamp.1991) (ODDL). Employer raises five issues on appeal: whether (1) the Judge erred in awarding total disability benefits; (2) the Judge erred in awarding benefits for a psychological condition; (3) Worker failed to establish to a medical probability that his symptoms were caused by his employment; (4) the Judge erred in awarding vocational benefits; and (5) the Judge erred in awarding prejudgment interest.

Because the issue of the Judge's authority to award prejudgment interest on awards made pursuant to the ODDL is an issue of first impression in New Mexico, we requested that the parties provide supplemental briefing on the issue and also invited the Workers' Compensation Administration to participate as amicus curiae. The additional briefing was extremely helpful.

We affirm the awards of total disability benefits and vocational rehabilitation benefits. However, we reverse the Judge's award of prejudgment interest and remand for further proceedings consistent with this opinion.

BACKGROUND

We briefly summarize the Judge's findings: Worker was employed from December 1986 until February 1990 by Employer as a sheet-metal fabricator. Worker did highly technical assembly work on military aircraft and had to use industrial solvents. As a result of his work-related exposure to the solvents, Worker developed toxic solvent syndrome, which caused permanent damage to his liver and to his gastrointestinal and neurological systems. Worker's treating physician, Dr. Armando Garcia–Cantu, diagnosed Worker as totally disabled and unable to return to his work as a sheet-metal fabricator because of his exposure and sensitivity to industrial solvents. Employer's consulting physician, Dr. Lee Ettinger, diagnosed Worker as having been exposed to toxic industrial solvents resulting in elevated liver functions, although tests indicated that Worker's liver functions had returned to normal by October 1990. Worker had suffered severe emotional problems as a result of his occupational disease.

Worker was 37 years old at the time of the hearing and, although he had a bachelor's degree in psychology, his only job experience, other than as a sheet-metal and fiberglass fabricator, was as a cashier and in warehouse maintenance. Worker was unable to resume his duties as a sheet-metal fabricator. Two vocational rehabilitation evaluations determined that Worker would not be successful in any of the vocational pursuits for which he had training and experience. Worker would require medical care for his neurological symptoms, and these costs were reasonably and necessarily related to his compensable disability. The rate of compensation was $291.75 per week.

Based on these findings, the Judge concluded that Worker had a compensable occupational disease and was totally disabled. The Judge thus ordered Employer to pay total disability benefits from February 7, 1990; medical costs for treating Worker's physiological and psychological symptoms; vocational rehabilitation; attorney fees; and prejudgment interest. We will discuss additional facts below as necessary.

DISCUSSION

1. *Standard Of Review.*

In reviewing the Judge's decision, this Court applies the "whole record" standard of review. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988). Under this standard, the reviewing court considers the evidence in the light most favorable to the Judge's decision, but must also consider the contravening evidence, *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n*, 107 N.M. 278, 281, 756 P.2d 558, 561 (1988), to determine whether, in light of all the evidence, substantial evidence supports the Judge's decision. *Kennecott Copper Corp. v. Chavez*, 113 N.M. 504, 510, 828 P.2d 416, 422 (Ct. App.), *cert. denied*, 113 N.M. 488, 827 P.2d 1302 (1992). For a conclusion to be supported by substantial evidence, the whole record must contain "sufficient credible evidence which a reasonable mind might accept as adequate to support the conclusion reached." *Estate of Mitchum v. Triple S Trucking*, 113 N.M. 85, 91, 823 P.2d 327, 333 (Ct.App.), *cert. denied*, 113 N.M. 16, 820 P.2d 1330 (1991). The reviewing court does not reweigh the evidence, substitute its judgment for that of the Judge, or seek to determine whether the evidence supports a contrary finding. *Id.* at 90–91, 823 P.2d at 332–33.

2. *Award Of Total Disability Benefits.*

Employer claims that the Judge's award of total disability benefits for the period after July 18, 1990, was error because Worker was no longer physically disabled after that date. Additionally, he had worked as a bookkeeper, a job from which he was fired for reasons unrelated to his physical condition. Relying on the test for total disability formulated under the former relevant statutes of the Workers' Compensation Act, NMSA 1978, Sections 52-1-25 and -26 (Repl.Pamp.1991) (effective until January 1, 1991), Employer contends that Worker's brief employment as a bookkeeper demonstrated that he was capable of working. As a result, Employer argues that Worker did not meet the requirements for total disability and the Judge should have found instead that he was partially disabled.

The ODDL defines "disablement" as:

(1) the total physical incapacity, by reason of an occupational disease, of an employee to perform any work for remuneration or profit in the pursuit in which the employee was engaged, provided that silicosis, when complicated by active tuberculosis of the lungs, shall be presumed to result in disablement; *or*

(2) the partial physical incapacity of an employee, by reason of an occupational disease, to perform to some percentage extent any work for which he is fitted by age, education and training.

Section 52-3-4(D) (emphasis added). To a certain extent, this language tracks most but not all of the language defining total disability and partial disability under the 1987 version of the Workers' Compensation Act. Sections 52-1-25(A), -26(B) (effective until January 1, 1991). However, we do not agree with Employer that the test for total disability that was applied under the 1987 Act is applicable to the facts of this appeal.

■ Former Sections 52-1-25(A) and -26(B) referred to the worker's inability to perform "any occupation" for which he or she was fitted. Thus, under the 1987 Act, to be totally disabled, a worker had to prove that he or she was completely unable to perform the tasks comprising the work performed at the time of injury *and* also was unable to perform any work for which he or she was fitted, based upon his or her age, education, and experience. *Sanchez v. Molycorp, Inc.*, 113 N.M. 375, 378, 826 P.2d 971, 974 (Ct.App.1992). In contrast, however, the ODDL expressly provides that, when considering whether an occupational disease has totally disabled a worker, the inquiry is limited to whether the worker is totally unable to perform any work *in the occupation in which the worker was engaged.* Section 52-3-4(D)(1); *see Holman v. Oriental Refinery,* 75 N.M. 52, 58-59, 400 P.2d 471, 476 (1965) (interpreting earlier version of statute, noted that language of ODDL is more definite and specific than parallel provision of workers' compensation law and does not require same interpretation). When interpreting a statute, words are given their ordinary meaning unless a different intent is clearly indicated. *Fahr v. Aaron McGruder Trucking,* 107 N.M. 241, 242, 755 P.2d 85, 86 (Ct.App.1988). Thus, in determining whether a worker is totally incapacitated under the ODDL, we do not consider other occupations for which the worker might be fitted.

■ We note that there is an apparent inconsistency within Section 52-3-4(D). Subsection 1 requires a determination of total physical incapacity to be based on whether the worker can "perform any work for remuneration or profit in the pursuit in which the employee was engaged," while Subsection 2 requires that, for a worker to be partially physically incapacitated, he must be unable "to perform to some percentage extent *any work* for which he is fitted by age, education and training." (Emphasis added.) Therefore the inquiry under Section 52-3-4(D)(2) is not limited to the worker's capacity to perform the duties of his occupation when injured as it is under Section 52-3-4(D)(1). However, contrary to Employer's apparent assumption, our task as a reviewing court is not to determine whether substantial evidence would support a finding that Worker was partially incapacitated, but rather to determine whether, in light of the whole

record, substantial evidence supports the Judge's finding that Worker was totally disabled. *See Antillon v. New Mexico State Highway Dep't*, 113 N.M. 2, 8, 820 P.2d 436, 442 (Ct.App.1991); *Bowles v. Los Lunas Sch.*, 109 N.M. 100, 104, 781 P.2d 1178, 1182 (Ct.App.), *cert. denied*, 109 N.M. 131, 782 P.2d 384 (1989). Thus, although we recognize the possibility that a worker who is partially disabled under the definition in Section 52–3–4(D)(2) could also be totally disabled under the definition in Section 52–3–4(D)(1), we need not address any potential inconsistency within Section 52–3–4 at this time.

■ The Judge found that Worker was wholly unable to perform the duties of a sheet-metal fabricator and would not be able to do so in the future. Relying on *Herrera v. Fluor Utah, Inc.*, 89 N.M. 245, 550 P.2d 144 (Ct.App.), *cert. denied*, 89 N.M. 321, 551 P.2d 1368 (1976), Worker contends that substantial evidence supports the Judge's findings. We agree. In that case, the worker, a painter, developed an allergic reaction to paint. This Court addressed the meaning of disablement under NMSA 1953, Section 59–11–4(a) (2d Repl. Vol., pt. 1), which is substantially identical to current Section 52–3–4(A), and rejected the employer's contention that the word "pursuit" should be broadly interpreted so that the possibility of the worker obtaining employment in other occupations should be considered when determining whether the worker was totally and permanently disabled. *Herrera*, 89 N.M. at 248, 550 P.2d at 147. Because *Herrera* held that the lower court's finding that the worker was unable to return to his previous occupation as a painter was supported by substantial evidence, the worker was totally disabled. *Id.* Similarly, substantial evidence supported the Judge's finding in this appeal that Worker was unable to return to his previous occupation as a sheet-metal fabricator. Dr. Garcia–Cantu testified that Worker was "100 percent incapacitated to go back to the same type of work that he was." Thus, we conclude that Worker was totally disabled within the meaning of Section 52–3–4(D).

Employer specifically attacks the Judge's award of benefits for the period after Worker had obtained and left a job as a bookkeeper. However, this Court has previously stated that, even assuming that disablement requires a total physical inability to perform work, "it does not necessarily follow that the performance of work for pay prevents a finding of total physical inability to work." *Salazar v. Kaiser Steel Corp.*, 85 N.M. 254, 257, 511 P.2d 580, 583 (Ct.App.), *cert. denied*, 85 N.M. 229, 511 P.2d 555 (1973). In that case, this Court affirmed the award of benefits to four miners even though they had briefly continued to work past the date on which the trial court determined they were disabled. *Id.* at 258, 511 P.2d at 584; *see also Holman*, 75 N.M. at 58, 400 P.2d at 475; *Vincent v. United Nuclear–Homestake Partners*, 89 N.M. 704, 706, 556 P.2d 1180, 1182 (Ct.App.), *cert. denied*, 90 N.M. 9, 558 P.2d 621 (1976). Thus, the fact that Worker briefly held another job unrelated to his occupation as a sheet-metal fabricator did not affect the determination that he was totally disabled within the meaning of Section 52–3–4(D)(1) because substantial evidence supported the finding that he was completely unable to return to his former occupation as a sheet-metal fabricator.

### 3. Award Of Benefits For Worker's Psychological Symptoms.

Employer argues that the Judge's award of benefits was error because it was for a psychological condition that is not compensable under the ODDL. Relying on *Chadwick v. Public Service Co.*, 105 N.M. 272, 731 P.2d 968 (Ct.App.1986), *cert. denied*, 105 N.M. 290, 731 P.2d 1334 (1987), Employer contends that the benefits were awarded for Worker's depression, which is not an occupational disease peculiar to the occupation of sheet-metal fabricator. Additionally, Employer argues that Worker's psychological symptoms were "secondary effects" of his toxic solvent syndrome and therefore uncompensable under Section 52–3–43. We believe Employer misconstrues both the Judge's award and Section 52–3–43.

In this case, contrary to Employer's contention that benefits were awarded solely for Worker's depression, benefits were awarded for Worker's toxic solvent syndrome and all of its associated symptoms, including the psychological symptoms. An occupational disease is "an ailment which is the result of a distinctive feature of the kind of work performed by claimant and others similarly employed, not an ailment caused by the peculiar place in which [the] particular claimant happens to work." *Chadwick*, 105 N.M. at 274, 731 P.2d at 970 (quoting with approval *Paider v. Park East Movers*, 19 N.Y.2d 373, 280 N.Y.S.2d 140, 227 N.E.2d 40, 43 (1967)); *see* § 52–3–33. This Court has repeatedly affirmed that an allergy may be compensable under the ODDL. *See Chadwick*, 105 N.M. at 274, 731 P.2d at 970. The worker was denied compensation in *Chadwick* because his allergy to airborne substances at his worksite did not prevent him from working at his occupation at a different site. *Id.* at 275, 731 P.2d at 971. However, when a worker develops an allergy to a substance that is peculiar to his or her occupation and, as a result, is prevented from working in that occupation, the allergy is a compensable occupational disease. *See Herrera*, 89 N.M. at 247, 550 P.2d at 146. Thus, because the solvents to which Worker is allergic are peculiar to the occupation of sheet-metal fabricator, we conclude that Worker's allergy to the solvents is a compensable disease under the ODDL.

Employer nonetheless argues that any award of benefits for Worker's "depression" was error under Section 52–3–43 because Worker's psychological impairment was a "secondary effect" of Worker's toxic solvent syndrome. We do not consider Section 52–3–43 applicable to the facts of this appeal. That statute applies when a worker's occupational disease either aggravates or is aggravated by a noncompensable disease. Section 52–3–43; *see also Vincent*, 89 N.M. at 706, 556 P.2d at 1182 (construing former law). Here, the Judge found that, as a result of his exposure to industrial solvents, Worker had sustained damage to his neurological system. Dr. Walter Decker, a toxicologist, testified that

"exposure to solvents can produce a wide variety of neurological, psychological and emotional problems" and that a person who had "been exposed over a number of years to solvents, [could] develop brain and nervous system damage which may become permanent." Dr. Decker further testified that common symptoms associated with long-term exposure to solvents included fatigue, bad memory, concentration difficulties, personality changes, irritability, and depression. Additionally, Dr. Garcia–Cantu testified that Worker's central nervous system was "medically implicated." Both doctors also testified to the physiological effects of the exposure to the solvents. Although Employer contends that Worker's psychological symptoms were "secondary effects" of his toxic solvent syndrome and thus uncompensable, we see no indication that a worker is entitled to treatment for only certain aspects of his or her occupational disease. Thus, we hold that substantial evidence supported the Judge's findings that Worker's psychological symptoms were caused by the toxic solvent syndrome. Benefits can be awarded for psychological symptoms of a compensable disease. *See Martinez v. University of California*, 93 N.M. 455, 457, 601 P.2d 425, 427 (1979) (holding that technician who worked with radioactive materials could recover under ODDL for anxiety neurosis); *cf. Marable v. Singer Business Machs.*, 92 N.M. 261, 586 P.2d 1090 (Ct.App.1978) (depression caused by sexual harassment is not an *occupational* disease). The Judge did not find any "other disease" within the meaning of Section 52–3–43 contributed to Worker's disablement.

### 4. *Medical Causation.*

Employer contends that Worker failed to establish, to a reasonable degree of medical probability, that his disablement was caused by his work environment. Employer argues that only one physician, Dr. Garcia–Cantu, connected Worker's disability with his work environment and thus, under whole record review, causation was not established.

Under the ODDL, when an employer denies that a worker's disability was the result of his or her work environment, "the worker must establish that causal connection as a medical probability by medical expert testimony." Section 52–3–32. When asked whether "to a reasonable medical certainty" he could determine the cause of Worker's condition, Dr. Garcia-Cantu testified that the cause was the chemicals with which he had been working as a sheet-metal fabricator. The other medical evidence did not contradict Dr. Garcia–Cantu's testimony. Although Dr. Decker did not state specifically what had caused Worker's symptoms because he was not a medical doctor, he testified that exposure to the chemicals in the solvents, particularly trichloroethylene, could cause Worker's liver dysfunction and his neurological, psychological, and emotional problems. Dr. Boris Kaim's neurological consultation report noted that Worker's symptoms could be caused by "fumes." This constituted substantial evidence supporting the Judge's determination that Worker's compensable occupational disease was caused by his work environment.

### 5. *Award Of Vocational Benefits.*

Employer claims that the Judge's award of vocational benefits to Worker was error because Worker was able to return to gainful employment without such benefits. Employer contends that Worker's brief employment as a bookkeeper demonstrates that his current inability to work was not due to his physical inability but rather to the economy and to his response to his employment situation.

The purpose of vocational rehabilitation is to restore a worker to "gainful employment, preferably that for which he has had training or experience." Section 52–3–17(A). If the worker is unable, because of the injury, to return to either the same or a modified position with the same employer, "he shall be entitled to vocational rehabilitation evaluation, counseling and training if necessary to return the employee to either a job related to his former employment or suitable employment in a nonrelated field." Section 52–3–17(C).

To receive vocational rehabilitation benefits, a worker must show that (1) because of the compensable injury, he or she cannot return to his or her former employment or is permanently unable to some percentage extent to perform work for which he or she has previous training or experience; and (2) that he or she is a proper candidate for and in need of such services. *Jaramillo v. Consolidated Freightways*, 109 N.M. 712, 716, 790 P.2d 509, 513 (Ct.App.), *cert. denied*, 109 N.M. 704, 789 P.2d 1271 (1990). If this two-prong test is satisfied, the worker has a right to the benefits. Substantial evidence supported the Judge's determination that Worker was totally incapable of returning to his former occupation. Employer has not proposed any work related to that of sheet-metal fabricator that Worker could safely do. Thus, our inquiry is focused on whether Worker was a suitable candidate for vocational rehabilitation.

The Judge found that Worker's only job experience, other than as a sheet-metal fabricator, was as a cashier and in warehouse maintenance, and that vocational rehabilitation evaluations had shown that Worker would not be successful in any of the pursuits for which he had experience. Employer basically argues that these findings were error because Worker's employment as a bookkeeper demonstrated that he could gain "suitable employment" without vocational rehabilitation. We disagree. The meaning of "suitable employment" was construed in *Jaramillo*. We recognize that that case involved NMSA 1978, Section 52–1–50 (Orig.Pamp.) and the phrase "gainful employment" is now used in the statement of purpose of Sections 52–1–50(A) and 52–3–17(A). However, we do not believe this change is material because vocational rehabilitation services are designed to return the employee to "suitable employment in a nonrelated work field." Section 52–3–17(B)(4). The issue here is whether work as a bookkeeper was, under the facts of this case, "suitable employment in a nonrelated work field."

In *Jaramillo*, this Court stated that:

[T]he term "restore ... to suitable employment" means to return the worker to employment similar in remuneration to that earned prior to the worker's disability and which is compatible with the worker's age, education, training, general physical and mental capacity, and previous work experience.

*Jaramillo,* 109 N.M. at 717, 790 P.2d at 514. Additionally, "[t]he fact that an injured worker retains some capacity to perform some type of work does not bar the worker from an award of vocational rehabilitation." *Id.* There was no evidence that Worker's employment as a bookkeeper was compatible with Worker's age, education, training, and previous work experience, and in fact the evidence was that Worker did not have previous experience as a bookkeeper. Thus, under the specific facts of this appeal, the bookkeeping position was not "suitable employment" for Worker within the meaning of Section 52–3–17.

### 6. *Award Of Prejudgment Interest.*

Whether prejudgment interest can be included in awards made pursuant to the ODDL is an issue of first impression in New Mexico. Originally, Worker and Employer focused on the applicability of NMSA 1978, Section 56–8–4 (Repl.1986) to awards made pursuant to the ODDL. Because the parties did not address another potential source for the Judge's authority, the Administration's Payments and Benefits Rules, N.M. Department of Labor, Workers' Compensation Division, WCD 89–4(V)(A)(3) (June 1989), this Court requested supplemental briefing from the parties and from the Administration as amicus curiae.

In his supplemental brief, Worker argues that Rule WCD 89–4(V)(A) is a valid exercise of the Administration's rule-making authority and that the Judge's award of prejudgment interest was valid under both the rule and the statute.

The Administration argues that Rule WCD 89–4(V)(A) is a valid exercise of its rule-making authority because it is not inconsistent with any statute. Having found no statute authorizing prejudgment interest in NMSA 1978, Chapter 52

(Repl.Pamp.1991), the Administration takes the position that the rule is the only source under the ODDL for the Judge's authority to award prejudgment interest. The Administration takes no position regarding the applicability of Section 56–8–4.

For the reasons that follow, we conclude that promulgation of Rule WCD 89–4(V)(A) was within the Administration's rule-making authority and that the rule is the sole source of the Judge's authority to award prejudgment interest under the ODDL. However, we determine that the award of prejudgment interest must be reversed, and we remand for consideration of whether the rules requirements were met because it is clear the applicability of the rule was not considered below.

■ The current version of Section 56–8–4 states that:

B. The court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering among other things:

(1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and

(2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

Section 56–8–4(B). Worker analogizes to cases decided under the Act to argue that Section 56–8–4 is applicable to all decisions by a workers' compensation judge, including decisions made pursuant to the ODDL. We reject Worker's argument. Awards of post-judgment interest pursuant to Section 56–8–4(A) in workers' compensation cases have been upheld. *See Sanchez v. Siemens Transmission Sys.,* 112 N.M. 236, 814 P.2d 104 (Ct.App.), *rev'd on other grounds,* 112 N.M. 533, 817 P.2d 726 (1991); *Candelaria v. General Elec. Co.,* 105 N.M. 167, 176, 730 P.2d 470, 479 (Ct. App.), *cert. denied,* 105 N.M. 111, 729 P.2d 1365 (1986). This Court has previously relied on analogous cases decided under the Workers' Compensation Act to construe the ODDL. *See, e.g., McDonald v. Kerr McGee,* 93 N.M. 192, 193, 598 P.2d 654, 655

**510**

(even though the Workers' Compensation Act does not specifically provide for equitable defenses, nevertheless, an appellate court has considered equitable claims and defenses in workers' compensation proceedings; therefore, by analogy, if the elements of estoppel are established, the doctrine can be applied in a case arising under the ODDL). Similar reasoning would lead this Court to conclude that Section 56–8–4 should apply to cases arising under the ODDL as it does to cases arising under the Act. However, in cases such as *McDonald*, the two acts were comparable. Here, the Act and the ODDL are explicitly different. The previous version of Section 52–1–38 made the laws applicable to civil judgments and executions also applicable to decisions made under the workers' compensation law. *See Gonzales v. Mountain States Mut. Casualty Co.*, 105 N.M. 100, 104, 728 P.2d 1369, 1373 (Ct.App.1986). We note that the statute has since been amended; we do not address the effect, if any, these amendments may have on the applicability of Section 56–8–4 to workers' compensation judgments. However, there is no comparable statute in the ODDL. Thus, the rationale for applying Section 56–8–4 to cases arising under the Act does not apply to cases arising under the ODDL.

Although it may be preferable to treat the Act and the ODDL as similarly as possible, we must also recognize and give effect to the differences between them. The failure of the legislature to include any provision in the ODDL that incorporates the rules applicable to other civil judgments indicates to us that the legislature intended the exclusivity provisions of the ODDL to prohibit looking beyond the ODDL for statutory remedies. *See* § 52–3–7. Thus, we conclude that Section 56–8–4 does not apply to decisions made pursuant to the ODDL.

■ Nonetheless, there is a basis for granting prejudgment interest in ODDL cases. The Administration has promulgated a rule stating in part:

**V. Penalties**

A. If at the close of a hearing and after review of the Mediator's recommended resolution, the Workers' Compensation Judge finds that any party has rejected the recommended resolution without reasonable basis or without reasonable expectation of doing better at formal hearing; [sic] the Workers' Compensation Judge may:

\* \* \* \* \* \*

(3) Assess prejudgment interest from the date of issuance of the recommended decision.

R. WCD 89–4(V)(A)(3). The statutory authority for the director of the Administration to adopt rules and regulations is contained in NMSA 1978, Section 52–5–4(A) (Repl.Pamp.1991), which states in part:

The director is authorized to adopt reasonable rules and regulations, after notice and public hearing, for effecting the purposes of the Workers' Compensation Act or the New Mexico Occupational Disease Disablement Law. Such rules and regulations shall include provisions for procedures in the nature of conferences or other techniques to dispose of cases informally or to expedite claim adjudication, narrow issues and simplify the methods of proof at hearings. All rules and regulations shall be published upon adoption and be made available to the public and, if not inconsistent with law, shall be binding on the administration of the Workers' Compensation Act or the New Mexico Occupational Disease Disablement Law.

Employer, in its supplemental brief, argues that Rule WCD 89–4(V)(A)(3) exceeds the scope of the Administration's rule-making authority under the Administrative Procedures Act, §§ 12–8–1 to –25 (Repl.Pamp.1988) (APA). However, the APA applies only to those state agencies that are "specifically placed by law under the Administrative Procedures Act." Section 12–8–2(A); *see also Livingston v. Ewing*, 98 N.M. 685, 687, 652 P.2d 235, 237 (1982). Employer cites no authority, and we know of none, indicating that the Administration has been placed by law under the APA. We thus conclude that the provisions of the APA are inapplicable to the facts of this appeal.

The failure of the ODDL to specifically authorize prejudgment interest does not render the regulation void. " 'It is ... a fundamental principle of administrative law that the authority of the agency is not limited to those powers expressly granted by statute, but includes, also, all powers that may fairly be implied therefrom.' " *Wimberly v. New Mexico State Police Bd.*, 83 N.M. 757, 758, 497 P.2d 968, 969 (1972) (quoting *Winston v. New Mexico State Police Bd.*, 80 N.M. 310, 311, 454 P.2d 967, 968 (1969)). Statutes are to be interpreted so as to facilitate their operation and the achievement of their goals. *Griego v. Bag 'N Save*, 109 N.M. 287, 291–92, 784 P.2d 1030, 1034–35 (Ct.App.1989), *cert. denied*, 109 N.M. 262, 784 P.2d 1005 (1990).

Section 52–5–4(A) specifically authorizes the director to develop rules and regulations to dispose of claims informally and expeditiously. If that statutory purpose is to be accomplished, a fair implication is that the Administration has the authority to impose sanctions for activity that actively interferes with the informal dispute resolution process. Rule WCD 89–4(V)(A) is directly related to this statutory purpose by requiring the Judge to find that a party "has rejected the recommended resolution without reasonable basis or without reasonable expectation of doing better at formal hearing" before imposing sanctions. Additionally, Rule WCD 89–4(V)(A)(3) does not conflict with any other provision of Chapter 52. Therefore, we conclude that it is "not inconsistent with law" and is binding. Section 52–5–4(A).

Employer argues that remand to determine whether prejudgment interest was awarded pursuant to Rule WCD 89–4(V)(A) is unnecessary because the Judge expressly rejected Worker's proposed findings that Employer denied with no reasonable basis that Worker suffered from an occupational disease and that there was no reasonable justification for Employer's failure to pay benefits from February 7, 1990. Additionally, Employer argues that the Judge clearly did not make the award pursuant to Rule WCD 89–4(V)(A)(3) because he did not date the award of prejudgment interest from the date of issuance of the recommended decision, as required by the rule. Employer also claims that, under the whole record standard of review, *see Tallman*, 108 N.M. at 127, 767 P.2d at 366, there was no evidence offered to support Worker's proposed findings.

Worker apparently argues in his supplemental brief that Employer rejected the recommended resolution while Worker accepted it. The award granted to Worker after the formal hearing was substantially greater than the recommended resolution. Worker apparently interprets this as a rejection of the recommended resolution "without good reason."

We disagree with both contentions. The findings proposed by Worker and rejected by the Judge did not involve the basis for awarding prejudgment interest under Rule WCD 89–4(V)(A). In fact, it appears that neither the parties nor the Judge considered the applicability of the rule. In situations where "the record on appeal generates doubt concerning the facts found or the law applied by the lower tribunal," it is ordinarily appropriate for this Court to remand to allow the lower tribunal to exercise its discretion. *Lucero v. Yellow Freight Sys., Inc.*, 112 N.M. 662, 667, 818 P.2d 863, 866 (Ct.App.1991). We therefore remand for consideration of whether prejudgment interest should be awarded pursuant to Rule WCD 89–4(V)(A).

## CONCLUSION

We hold that substantial evidence supported the Judge's findings that Worker (1) suffered a compensable occupational disease caused by conditions at his workplace; (2) will never be able to work again at his former occupation or in a related position; and (3) is entitled to vocational rehabilitation benefits. We affirm the Judge's award of total disability, medical, and vocational rehabilitation benefits. We also hold that Section 56–8–4 does not apply to cases brought under the ODDL. Finally, we conclude that Rule WCD 89–4(V)(A) is a valid exercise of the Administration's authority, but remand for consideration of whether

awarding prejudgment interest is appropriate under the rule. The Judge may consider legal representation on appeal in granting any award of attorney fees.

**IT IS SO ORDERED.**

CHAVEZ, J., concurs.

HARTZ, J., concurs in part and dissents in part.

HARTZ, Judge (concurring in part, dissenting in part).

I concur in the result, except for the remand for further proceedings regarding prejudgment interest. Although I agree with much of the majority opinion, I am writing separately because I have several disagreements with the majority and would decide some issues on different grounds. I will discuss the issues in the order in which they appear in the majority opinion.

## I. TOTAL DISABILITY BENEFITS

Under the ODDL an employee is totally disabled if he or she is physically unable "to perform any work for remuneration or profit in the pursuit in which the employee was engaged." NMSA 1978, § 52–3–4(D) (Repl.Pamp.1991). The record contains sufficient evidence upon which the workers' compensation judge could properly have found that Worker was not able to perform any work as a sheet-metal fabricator, the pursuit in which he had been engaged at the time of his disability. Worker's capacity to work as a bookkeeper was irrelevant to the determination of whether he was totally disabled under the ODDL, because bookkeeping was not the pursuit in which he was engaged at the time of his disability. Therefore, I join in parts "1" and "2" of the majority opinion, with one reservation.

My reservation is that the opinion appears to misread *Salazar v. Kaiser Steel Corp.*, 85 N.M. 254, 257–58, 511 P.2d 580, 583–84 (Ct.App.), *cert. denied*, 85 N.M. 229, 511 P.2d 555 (1973). As I understand *Salazar*, a worker who performs a job may nevertheless be disabled from performing the job if there are medical reasons why the worker should not be performing the tasks of the job. There is no evidence in the record before us to indicate that Worker was medically incapacitated from performing the job of bookkeeper. Therefore, I fail to see the relevance of *Salazar* to the majority discussion of Worker's employment as a bookkeeper.

## II. BENEFITS FOR DEPRESSION

Expert testimony established that the chemicals to which Worker was exposed can cause toxic solvent syndrome, the symptoms of which can include psychological problems. I agree with the majority that the ODDL would provide medical benefits for psychological injury directly caused by the chemicals to which Worker was exposed.

I am not convinced, however, that the evidence relied upon by the majority established to a reasonable degree of medical probability that Worker's psychological problems were caused by his exposure to toxic solvents. For example, Dr. Garcia–Cantu testified only that Worker's central nervous system "possibly" was "medically implicated." Other testimony noted in the majority opinion is, in context, rather ambiguous. Nevertheless, I would not reverse for failure of Worker to prove causation. My review of the record indicates that Employer's briefs on appeal failed to note substantial significant testimony pertinent to the issue of causation. Because of Employer's failure to present this issue properly on appeal, the judgment cannot be reversed on this ground. *See* SCRA 1986, 12–213(A)(3) (Repl.1992); *Martinez v. Southwest Landfills*, 115 N.M. 181, 848 P.2d 1108 (Ct.App.1993).

## III. AWARD OF VOCATIONAL BENEFITS

I agree with the majority that we should affirm the Judge's award of vocational benefits to Worker. The fact that Worker was employed for a brief time as a bookkeeper does not necessarily mean that he was qualified for regular employment in that position. For example, he may have deficiencies in his skills that for some reason

did not surface during the brief period of his employment. Employer has failed to establish that the Judge abused his discretion in ordering that "[a] vocational rehabilitation plan shall be developed for [Worker]."

## IV. PREJUDGMENT INTEREST

I concur in all of part "6" of the majority opinion, except for the final two sentences. I would reverse the award of prejudgment interest and not remand for reconsideration of that issue.

I agree that Worker did not raise below the contention that he was entitled to prejudgment interest pursuant to Rule WCD 89–4(V)(A). I can think of no reason for Worker not to submit findings necessary for the application of the rule, other than that Worker might have decided as a tactical matter to focus solely on NMSA 1978, Section 56–8–4 (Repl.1986), as a source of authority for prejudgment interest. To remand at this time for a determination of the applicability of the rule would place a substantial burden upon both Employer and the Administration. The Judge who heard this matter has been appointed to the district court. Any further findings in this case would need to be made by a new workers' compensation judge. To rule on the reasonableness of Employer's actions in this proceeding would require the new judge to become familiar with a great deal, perhaps all, of the factual and procedural background of the case. Both parties would be entitled to make presentations to the judge, at least to argue from the evidence of record. I suspect that the attorney's fees for each party would be comparable to the amount of prejudgment interest at stake. I also find it relevant that the Judge who heard the case rejected Worker's requested findings that "[t]here was no reasonable basis for [Employer] to deny that [Worker] suffered from an occupational disease as a result of [Worker's] employment by [Employer]," and "[t]here was no reasonable justification for non-payment of weekly compensation benefits from February 7, 1990 to the present and [Worker] is, therefore, entitled to prejudgment interest." In these circumstances, I think it is inappropriate to remand for the purpose of giving Worker an opportunity to pursue a theory of relief that he did not pursue in the original proceeding.

Finally, one additional observation concerning the efficacy of Rule WCD 89–4(V)(A)(3). Even if we are incorrect in holding that Section 56–8–4 does not apply to proceedings pursuant to the ODDL, Rule WCD 89–4(V)(A)(3) would still control the award of prejudgment interest in this case. Section 56–8–4(B) does not compel the award of prejudgment interest. It permits an award of prejudgment interest by the court "in its discretion." The Administration has the authority to issue a rule regarding the circumstances in which workers' compensation judges should exercise such discretion. The rule would be binding on workers' compensation judges, so that prejudgment interest could be awarded only in accordance with the rule. *See New Mexico State Racing Comm'n v. Yoakum,* 113 N.M. 561, 564, 829 P.2d 7, 10 (Ct.App.1991), *cert. denied,* 113 N.M. 352, 826 P.2d 573 (1992).